*In re* Ángel M. Rosado Nieves, querellado.

*Número:* CP-2000-14 *Resuelto:* 30 de junio de 2003

*Roberto J. Sánchez Ramos* y *Gustavo A. Gelpí*, procuradores generales, *Rosa N. Russé García*, procuradora general interina, *Vanesa Lugo Flores*, subprocuradora general, *Minnie H. Rodríguez López*, procuradora general auxiliar, y *Hon. Rafael Vissepó Vázquez*, juez superior de Carolina, querellantes; *Ramón Negrón Soto*, comisionado especial, en informe.

PER CURIAM: En el presente recurso nos corresponde dilucidar si el Lic. Ángel M. Rosado Nieves incurrió en con-

ducta violatoria de los Cánones 12 y 23 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, al representar legalmente a la Sra. Guillermina Quiñones Rosario en procedimientos relacionados con la ejecución de una sentencia de liquidación de una sociedad ganancial y otros procedimientos posteriores.

## I

El 25 de octubre de 1999 el juez Rafael Vissepó Vázquez, del Tribunal de Primera Instancia de Carolina, mediante resolución, ordenó que se elevara el expediente del caso *Guillermina Quiñones Rosario v. Cruz Betancourt Ruiz* para que este Tribunal examinara el comportamiento del Lic. Ángel M. Rosado Nieves (en adelante licenciado Rosado Nieves) a la luz de los postulados éticos que rigen la profesión legal. A esos efectos, este Tribunal ordenó al Procurador General la investigación correspondiente.

Oportunamente, el Procurador General rindió su informe. En él sostuvo que el licenciado Rosado Nieves incurrió en violación al Canon 12 del Codigo de Ética Profesional, 4 L.P.R.A. Ap. IX, al desplegar una conducta que causó dilaciones innecesarias durante la impugnación de subasta en el caso *Guillermina Quiñones Rosario v. Cruz Betancourt Ruiz*. En este caso, el licenciado Rosado Nieves no cumplió con varios señalamientos del tribunal ni con las órdenes que éste emitió. Por otro lado, el Procurador señaló que el licenciado Rosado Nieves violó el Canon 23 del citado Código porque adquirió un interés y una participación personal en el dinero que obtuvo su cliente al vender una propiedad.

Examinado el Informe del Procurador General, se le instruyó que presentara los cargos correspondientes. Una vez el licenciado Rosado Nieves contestó la querella presentada, nombramos un Comisionado Especial para que recibiera y aquilatara la prueba. Luego del examen de rigor,

éste nos ha sometido su informe del cual se desprende el siguiente trasfondo fáctico y legal.

En 1989 se dictó sentencia en el caso *Guillermina Quiñones Rosario v. Cruz Betancourt Ruiz,* lo que puso fin a un pleito de liquidación de la sociedad de gananciales compuesta por Guillermina Quiñones Rosario y Cruz Betancourt Ruiz (la señora Quiñones y el señor Betancourt). En esa sentencia se dispuso lo referente a la adjudicación y liquidación de los bienes de la referida sociedad ganancial. Luego de darle su respectivo valor a los bienes pertenecientes a la sociedad ganancial y de acreditar los créditos correspondientes a cada uno de los ex cónyuges, el tribunal de instancia determinó que la parte correspondiente al señor Betancourt era la mitad del valor total de los bienes,[1] el cual ascendió a setenta y cinco mil setecientos setenta y cinco dólares, menos un crédito a favor de la señora Quiñones por doce mil ochocientos cuarenta y siete dólares con cincuenta centavos.[2] En síntesis, el señor Betancourt tendría derecho a obtener la cantidad de veinticinco mil cuarenta dólares de la venta de la propiedad, mientras que la señora Quiñones tendría derecho a obtener la cantidad de cincuenta mil setecientos treinta y cinco dólares.

La señora Quiñones contrató al licenciado Rosado Nieves el 13 de mayo de 1993 para que la representara en los procedimientos de ejecución de la sentencia que dictó el Tribunal de Primera Instancia, en la cual se liquidó la sociedad de gananciales Betancourt-Quiñones. Éste se des-

---

[1] Consiste en un solar de mil trescientos metros cuadrados con estructura que consta de una casa principal con cuatro dormitorios, una terraza, una marquesina y un anexo, que consta de una casa en madera techada con zinc, con dos dormitorios y un balcón.

[2] La mitad del valor de la propiedad sería $37,887.50. A esta cantidad se le restaría el crédito de $12,847.50, por lo que el señor Betancourt tendría derecho a $25,040.

empeñó como abogado de la señora Quiñones hasta el 23 de septiembre de 1996.(³)

En 1993 la señora Quiñones solicitó la ejecución de la referida sentencia. A esos efectos, el tribunal expidió un mandamiento al alguacil Ángel L. Hernández Benítez (alguacil) para que se efectuara la venta en pública subasta del único inmueble de la extinta sociedad ganancial. Luego de la celebración del correspondiente procedimiento de subasta, fue declarada desierta,(⁴) razón por la cual se le adjudicó el bien a la señora Quiñones por la suma de cincuenta mil setecientos treinta y cinco dólares.(⁵) En vista de esto, el 13 de octubre de 1993 se otorgó la correspondiente escritura de adjudicación judicial que autorizó el licenciado Rosado Nieves. En ésta comparecieron el alguacil y la señora Quiñones. El alguacil traspasó el dominio absoluto de la propiedad a la señora Quiñones.

En 1995 esa propiedad fue objeto de una compraventa en la cual la señora Quiñones traspasó el dominio de la referida finca a un tercero. Esa escritura también la autorizó el licenciado Rosado Nieves.

Esta transacción la financió Doral Mortgage (en adelante Doral). A estos efectos, Doral emitió diversos cheques, entre los cuales se encuentra uno por veintiséis mil dólares a favor del licenciado Rosado Nieves. Esto ocurrió en presencia de la señora Quiñones y con su aquiescencia.

Así las cosas, en octubre de 1995 el señor Betancourt solicitó del Tribunal de Primera Instancia que se declarara nula la subasta o, en la alternativa, que se le ordenara a su ex esposa consignar en el tribunal la cantidad de doce mil

---

(³) El licenciado Rosado Nieves presentó la renuncia a la representación el 4 de septiembre de 1996, y el tribunal la aceptó el 23 de septiembre de 1996.

(⁴) No surge del expediente que se haya celebrado una segunda y una tercera subasta que hayan sido declaradas desiertas antes de adjudicarle la propiedad a la señora Quiñones por el valor de su acreencia.

(⁵) Dicha cantidad es la correspondiente a ésta como resultado de la división de la sociedad ganancial luego de sumado el crédito adjudicado por el tribunal en la sentencia de liquidación de la sociedad ganancial. Nada se dispuso sobre la participación del señor Betancourt.

quinientos veinte dólares a su favor, cantidad a la que tenía derecho en virtud de su participación en la extinta sociedad de gananciales, propietaria de la referida finca, según dispuesto en la sentencia que emitió, en 1989, el Tribunal de Primera Instancia.(6)

A estos efectos, el Tribunal de Primera Instancia señaló una vista para el 8 de diciembre de 1995. A esta vista el licenciado Rosado Nieves no compareció. Sin embargo, se deduce del expediente que éste no fue citado. Por esta razón, el tribunal la reseñaló para el 27 de febrero de 1996.

De la minuta de la vista del 8 de diciembre se infiere que el licenciado que fue notificado de la vista señalada para el 27 de febrero del 1996 fue el antecesor del querellado, quien había renunciado en *1993* y a quien el licenciado Rosado Nieves sustituyó en mayo de ese mismo año. A esta vista el licenciado Rosado Nieves, como es de esperarse, tampoco compareció. En vista de su incomparecencia, el tribunal expidió una orden de mostrar causa por la cual no debieran ser encontrados incursos en desacato por sus incomparecencias del 27 de febrero de 1996, el licenciado Rosado Nieves, la anterior representación legal de la señora Quiñones y la propia señora Quiñones. El tribunal señaló vista para el 28 de marzo de 1996.

El 28 de marzo de 1996 compareció el licenciado Rosado Nieves y le indicó al tribunal que no había podido localizar a la señora Quiñones. Informó, además, que la propiedad cuya subasta se impugna se le vendió a una tercera persona. Ese día se señaló vista para el 27 de junio de 1996 y se expidió, en contra de la señora Quiñones, una orden de mostrar causa por la cual no debiese ser encontrada incursa en desacato civil. Se le ordenó, además, pagar doce

---

(6) En esa sentencia, en donde se valoró la propiedad en $76,775, el señor Betancourt tenía derecho a la mitad de esta cantidad menos el crédito de $12,847.50 que adjudicó el Tribunal de Primera Instancia a la señora Quiñones. Al adjudicársele a ésta la finca por el valor de $50,735, el Tribunal de Primera Instancia sostuvo que el señor Betancourt tiene derecho a la mitad de esa cantidad menos el crédito de $12,847 antes descrito, para un total $12,520.

mil quinientos veinte dólares en o antes de la vista señalada para el 27 de junio. A esa vista compareció el licenciado Rosado Nieves. En ésta el tribunal ratificó la orden que expidió en cuanto a la señora Quiñones para el pago de los $12,520, más intereses.

Luego de varios incidentes procesales ante el Tribunal de Primera Instancia, el 13 de marzo de 1997 se ordenó a la señora Quiñones el pago de la referida suma en un término de cinco días bajo apercibimiento de desacato y la posibilidad de ordenar su arresto por incumplimiento.[7] No se infiere de la minuta que se haya notificado al licenciado Rosado Nieves. Esa orden se volvió a notificar el 6 de mayo de 1998, esta vez con acuse de recibo.

El 5 de mayo de 1998 se celebró una vista sobre el estado procesal del caso a la cual ni el licenciado Rosado Nieves ni su clienta comparecieron. Según el Informe del Comisionado Especial, el querellado no fue citado. Debemos aclarar que ya para esta fecha el querellado no ostentaba la representación de la señora Quiñones que, como mencionáramos anteriormente, culminó el 23 de septiembre de 1996 cuando el tribunal le aceptó la renuncia a la representación, lo cual se notificó el 30 de septiembre de ese mismo año. No obstante, el tribunal procedió a citar al querellado para el 11 de junio de 1998 bajo apercibimiento de desacato. Esa orden se diligenció el 21 de mayo de 1998.

Aunque el licenciado Rosado Nieves *ya no ostentaba la representación de la señora Quiñones*, al día siguiente de la notificación de la orden antes mencionada, éste presentó una moción informativa en la cual señaló que para la fecha de su cita estaría fuera de Puerto Rico y señaló varias fechas hábiles. Esta moción se presentó el 22 de mayo a las 8:53 A.M., según evidencia el sello del tribunal. Debido a que no recibió comunicación alguna del tribunal, el día de

---

[7] Se ordenó la notificación de esa orden a través de un abogado que residía en la misma jurisdicción que la señora Quiñones, debido a que ésta reside fuera de la jurisdicción del tribunal. El 5 de mayo de 1998 el tribunal ordenó que esa orden se notificara a la última dirección conocida en Worchester, Massachussets.

la vista envió a su secretaria para que informara al tribunal que él se encontraba fuera de Puerto Rico. Recalcamos que para esta fecha hacía año y medio que el licenciado Rosado Nieves no ostentaba la representación legal de la señora Quiñones.

En vista de la incomparecencia del licenciado Rosado Nieves, el Tribunal de Primera Instancia ordenó su arresto el 12 de junio de 1998. Esta orden se diligenció; se trajo al querellado ante el tribunal, pero éste sufrió una caída en el propio tribunal y lo excusaron para que fuese llevado al hospital. Sin embargo, el licenciado Rosado Nieves, en vez de acudir al hospital, se fue a su casa. Debido a que el tribunal sólo autorizó la ida al hospital, consideró que el irse a su casa constituyó un incumplimiento con las órdenes del tribunal. Por esta razón, el tribunal lo declaró incurso en desacato civil, ordenó su encarcelamiento inmediato, le fijó una fianza de diez mil dólares y señaló una vista para el 29 de junio "a los fines de considerar la conveniencia de la continuación de su reclusión".

El 22 de junio se llamó el caso fuera de calendario y comparecieron el querellado y el fiscal de distrito. Allí se explicó lo sucedido el 15 de junio, en cuanto a su caída y que la razón para irse a su casa en vez de al hospital fue la tardanza de la ambulancia y la persistencia de su dolor. El tribunal dejó sin efecto la orden de arresto del 15 de junio. Sobre la vista señalada para el 29 de junio de 1998, no tenemos minuta.

En vista de lo anterior, el 24 de junio de 1998 el licenciado Rosado Nieves presentó una querella en contra del Hon. Rafael L. Vissepó Vázquez[8] por actuaciones indebidas. La Oficina de Administración de los Tribunales no encontró que el juez incurrió en conducta impropia que

---

[8] Juez del Tribunal de Primera Instancia, quien posteriormente elevó los autos del caso ante el Tribunal Supremo para que se ejerciera nuestra jurisdicción disciplinaria.

justificara la elevación de la investigación para la consideración del Tribunal Supremo.

Al licenciado Rosado Nieves lo citaron para una vista el 9 de diciembre de 1998, y éste, a pesar de que ya no fungía como la representación legal de la señora Quiñones, compareció y entregó unos documentos que le requirieron. Ese día se le dio un término de treinta días para que presentara un memorando con las defensas que estimase pertinente. En esa vista, el querellado le recordó al tribunal que no ostentaba la representación de la señora Quiñones desde 1996, que no tenía ningún tipo de comunicación con su ex cliente y que no conocía de su paradero.

No obstante, el 28 de enero de 1999, mediante una moción informativa, el licenciado Rosado Nieves le informó al tribunal que la señora Quiñones estaba de acuerdo en pagar la cantidad adeudada a su ex esposo ($12,520).[9] El 25 de octubre de 1999 el Tribunal de Primera Instancia emitió una resolución en la que le ordenó a la señora Quiñones satisfacer la cantidad de doce mil quinientos dólares, más los intereses devengados desde octubre de 1993 hasta que la totalidad del dinero fuera consignado.[10]

## II

En síntesis, la controversia que nos ocupa se circunscribe a determinar si el querellado, con su conducta, incurrió en violación de los cánones del Código de Ética Profesional. En primer lugar, se le imputan violaciones al

---

[9] Primero envió seis mil dólares y luego envió dos mil dólares. Se solicitó del tribunal autorización para consignar este dinero.

[10] Para esta consignación se concedió un plazo de treinta y cinco días. El tribunal autorizó la consignación de los ocho mil dólares enviados anteriormente como pago parcial de lo adeudado. Surge del expediente que el señor Betancourt presentó una moción informativa donde sostiene que recibió un cheque por dos mil dólares adicionales a los ya consignados. No surge del Informe que se haya presentado prueba adicional en cuanto al saldo de la deuda, pero tampoco se presentó prueba en contrario. Debemos señalar que no surge que el señor Betancourt haya reclamado nada más ante el tribunal.

Canon 12 debido a las dilaciones en los procedimientos producidos por sus repetidas incomparecencias a los señalamientos del tribunal. En segundo término, debemos determinar si incurrió en conducta violatoria del Canon 23 al adquirir interés en el dinero obtenido como producto de la venta de una propiedad de su clienta. Por último, debemos determinar si la participación del querellado en el otorgamiento de las escrituras referentes al bien de su clienta atentan contra los postulados éticos que rigen nuestra profesión.

 A. Los abogados son una parte esencial del proceso de impartir justicia, y como tal tienen la ineludible encomienda de desempeñar su labor con la mayor diligencia, responsabilidad e integridad. *In re Ortiz Velázquez*, 145 D.P.R. 308 (1998); *In re Córdova González*, 135 D.P.R. 260 (1994). El Canon 12 del Código de Ética Profesional, 4 L.P.R.A. AP. IX, le impone la obligación a la profesión togada de ser entes diligentes y responsables en la tramitación de los casos, evitando así dilaciones innecesarias que entorpezcan su resolución. Así, pues, se le impone el deber a todo abogado de ser puntual en su asistencia, y conciso y diligente en la presentación de sus causas. Ello implica que tienen la responsabilidad de desplegar todas las diligencias necesarias para evitar dilaciones indebidas en la tramitación y solución de los casos. Canon 12 del Código de Ética Profesional, *supra*. Por lo tanto, la incomparecencia *injustificada* a las vistas que señaló el tribunal —que ocasionaron la suspensión y dilatación en la tramitación de las causas— viola el citado Canon 12.

 B. Por otro lado, el Canon 23 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, prohíbe, en primer lugar, que el abogado adquiera interés o participación en el litigio que se le encomiende. También dispone que la relación entre un abogado y su cliente es de naturaleza fiduciaria, por lo que ésta tiene que estar fundada en la honradez absoluta. Resalta, además, que cuando el letrado advenga

en posesión de bienes o dinero del cliente, debe dar pronta cuenta de este hecho a su cliente, y nunca debe mezclar esos bienes con los suyos.

Como mencionáramos, el Canon 23, *supra*, prohíbe que el abogado adquiera interés o participación en el asunto en litigio que le fue encomendado. No obstante, el carácter litigioso del bien tiene que coincidir en tiempo con la intervención del abogado en el litigio en relación con el bien. Una vez concluido el litigio, el Canon 23 no impide que, en pago de los honorarios, se le otorgue al abogado una participación en el bien del cliente. *In re Castro Mesa*, 131 D.P.R. 1037 (1992). Además, en virtud de lo dispuesto por el Canon 23, *supra*, los abogados deben velar por que la relación entre el abogado y el cliente sea transparente. La naturaleza fiduciaria de la relación entre el abogado y el cliente exige que exista una confianza absoluta entre ambos. Esta transparencia es de vital importancia en los asuntos de carácter económico.

Por último, el citado Canon 23 claramente prohíbe la retención y disposición inapropiada de cualquier suma de dinero perteneciente a los clientes. *In re Gorbea Martínez*, 149 D.P.R. 784 (1999); *In re Fernández Paoli*, 141 D.P.R. 10 (1996). La retención que haga un abogado de los fondos pertenecientes a sus clientes amerita sanción aunque los haya devuelto o no haya tenido la intención de apropiárselos. Por esto, reiteradamente hemos expresado que retener, *en forma no autorizada*, sumas de dinero pertenecientes al cliente o disponer de ellas impropiamente, constituye una conducta gravemente impermisible para un abogado. *In re Marrero Figarella*, 146 D.P.R. 541 (1998); *In re Vázquez O'Neill*, 121 D.P.R. 623 (1988).

Hemos expresado que aún en circunstancias en que un cliente acuerde pagar honorarios tan pronto reciba dinero en el caso que tramita, no se justifica que el abogado, *sin consentimiento del cliente*, endose los cheques y

se apropie de ellos. *In re Pereira Esteves*, 147 D.P.R. 147 (1998); *In re Fernández Paoli*, supra; *In re Báez Torres*, 108 D.P.R. 358 (1979). En fin, el letrado no puede, aunque se le adeuden honorarios, cobrarlos por su cuenta. *In re Morales Soto*, 134 D.P.R. 1012 (1994).

En síntesis, la transparencia de las relaciones entre el abogado y el cliente, y la naturaleza fiduciaria de esa relación fundamentada en la honestidad absoluta es piedra angular para nuestro sistema jurídico. Por esta razón, reiteradamente hemos establecido que los abogados no deben cobrar *indebidamente* los honorarios de abogado, retener *sin autorización* dinero de sus clientes y disponer del dinero impropiamente.

C. La Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*), le impone al notario una función dual. Por un lado, sirve como agente instrumental del documento notarial; por el otro, es un profesional del Derecho con el deber de asesorar y aconsejar legalmente a los otorgantes. *In re Colón Ramery*, 133 D.P.R. 555 (1993).

El abogado-notario representa la fe pública. Es el testigo por excelencia que da forma al convenio entre las partes. Como parte de su función, tiene el deber de asesorar y advertir sobre los aspectos legales del instrumento que ante él se otorga y que él autoriza. El abogado-notario tiene que ser imparcial, incluso cuando haya representado a uno de los otorgantes anteriormente; tiene la obligación de asesorar por igual a ambos otorgantes.

El notario no es el simple observador de un negocio que ante él se otorga. Su función no se limita a cerciorarse de la identidad de las partes y de la autenticidad de sus fincas. El notario ostenta una función pública que "trasciende la de un autómata legalizador de firmas y penetra al campo de legalidad de la transacción que ante él se concreta". *In re Colón Ramery*, supra.

■ La labor notarial se debe ejercer con sumo esmero, cuidado y celo profesional, cumpliendo estrictamente con la Ley Notarial y con los cánones del Código de Ética Profesional. *In re Pizarro Colón*, 151 D.P.R. 94 (2000); *In re Vera Vélez*, 148 D.P.R. 1 (1999).

■ Para cumplir con las responsabilidades de la profesión, tanto de abogado como en su función notarial, el notario tiene el deber de realizar las averiguaciones mínimas pertinentes que requieren las normas más elementales de la profesión. El notario tiene, además, el deber de hacer las advertencias, aclaraciones y explicaciones necesarias en el otorgamiento de determinado negocio, asegurándose de que las partes presten un consentimiento informado. *In re Pizarro Colón*, supra; *In re Jiménez Brackel*, 148 D.P.R. 287 (1999).

A la luz de esta normativa, pasemos a discutir la situación que tenemos ante nos.

### III

A. El Procurador General sostuvo que el licenciado Rosado Nieves violó el citado Canon 12 del Código de Ética Profesional al desplegar una conducta que causó dilaciones innecesarias durante la impugnación de subasta en el caso *Guillermina Quiñones Rosario v. Cruz Betancourt Ruiz*. En este caso, sostuvo el Procurador, el licenciado Rosado Nieves no cumplió con varios señalamientos del tribunal ni con las órdenes que éste emitió. Sin embargo, del Informe del Comisionado se infiere que *a las únicas vistas a las que el querellado no compareció fueron aquellas que no se le notificaron.* Cabe señalar que mientras se le notificó acudió a todas, incluso cuando ya no era abogado de la señora Quiñones. Veamos.

La primera vista para el caso de impugnación de subasta se señaló para el 8 de diciembre de 1995. Aunque el licenciado Rosado Nieves no compareció a esta vista, no se

deduce del expediente que al querellado se le hubiese citado. No podemos, por lo tanto, responsabilizar al querellado por esta ausencia.

El tribunal señaló la vista para el 27 de febrero de 1996. Al estudiar la minuta de la vista del 8 de diciembre, en la cual se señaló esta segunda vista, concluimos que de ésta no se infiere que al licenciado Rosado Nieves se le notificó. De hecho, se deduce que a quien le notificaron de la vista fue al abogado que ostentó la representación de la señora Quiñones antes que el licenciado Rosado Nieves la asumiera. Como mencionáramos, el letrado a quien se le notificó había renunciado en *1993*, y ese mismo año lo sustituyó el licenciado Rosado Nieves. A la vista del 27 de febrero el querellado, como era de esperarse, tampoco compareció. El tribunal señaló la vista para el 28 de marzo de 1996.([11])

El 23 de septiembre de *1996* el tribunal aceptó la renuncia a la representación legal de la señora Quiñones que presentó el licenciado Rosado Nieves.

El 5 de mayo de 1998 se celebró una vista sobre el estado procesal del caso a la cual ni el licenciado Rosado Nieves ni su clienta comparecieron. Según se deduce del Informe del Comisionado, no se citó al licenciado Rosado Nieves para la vista. Además, ya *para esa fecha éste no ostentaba la representación legal* de la señora Quiñones. No obstante, el tribunal procedió a citarlo para el 11 de junio de 1998 bajo apercibimiento de desacato.

*Un día después* del diligenciamiento de esta citación, el licenciado Rosado Nieves presentó una moción en la cual informó que para esa fecha se encontraría fuera de Puerto Rico, y ofreció *ocho* fechas hábiles para señalamiento, las cuales implicaban sólo cuatro días de demora. No olvidemos que para esta fecha el licenciado Rosado Nieves *no*

---

([11]) El 28 de marzo de 1996 *compareció* el querellado, pero como no se había localizado a la señora Quiñones, se señaló la vista para el 27 de junio de 1996. El 27 de junio de 1996 el querellado *compareció* a la vista señalada.

ostentaba la representación legal de la señora Quiñones. Debido a que no recibió comunicación alguna del tribunal, el día de la vista compareció su secretaria para informar al tribunal que el licenciado se encontraba fuera de Puerto Rico. Considerando que éste ya no era abogado de la señora Quiñones, que envió con tiempo una moción en la que propuso ocho fechas hábiles para el traslado, el Comisionado Especial concluyó —conclusión que acogemos— que el licenciado Rosado Nieves fue diligente al enviar a su secretaria a excusarlo el día de la vista.

Por último, el querellado, a pesar de que ya no fungía como la representación legal de la señora Quiñones, compareció en respuesta a una orden que dio el tribunal a una vista el 9 de diciembre de 1998. Llevó consigo ciertos documentos que le requirieron. Ese día se le dio un término para que presentara un memorando con las defensas que estimase pertinentes. El licenciado Rosado Nieves le recordó al tribunal que no ostentaba la representación de la señora Quiñones desde 1996, y que no tenía ningún tipo de comunicación con su ex cliente. El licenciado Rosado Nieves no cumplió con someter el memorando de derecho, siendo esto lo único con lo que no cumplió de la orden que emitió el tribunal, a pesar de tener conocimiento de ella. Sin embargo, al analizar este incumplimiento tomamos en consideración que el *tribunal de instancia* relevó al licenciado Rosado Nieves de la representación legal de la señora Quiñones *en septiembre de 1996*, que así reiteradamente él lo informó al tribunal y que, no obstante, cumplió con señalamientos y entregas de documentos solicitados, que eventualmente consiguió a la señora Quiñones —quien se había mudado fuera de Puerto Rico— y que logró que ésta pagara lo que le debía al señor Betancourt.

A tenor con lo antes expuesto, entendemos que en cuanto al primer cargo, el licenciado Rosado Nieves no puede ser responsabilizado por su incomparecencia al tribunal a vistas para las cuales no fue citado. Además, el

licenciado Rosado Nieves fue diligente en su actuación en el tribunal, incluso cuando ya no era abogado de la señora Quiñones. Consiguió a su antigua clienta y logró un acuerdo entre las partes en el cual ésta se comprometió a pagar la deuda que reclamaba el señor Betancourt. El letrado sólo dejó de cumplir con la orden de someter el memorando de derecho sin solicitar que se le excusara de esa diligencia. Por considerar que para ese momento ya no era abogado de la señora Quiñones y que así lo hizo constar al tribunal, y que entregó al tribunal todo documento que se le solicitó, entendemos que no procede sancionarlo por ese cargo.

B. Por otro lado, el Procurador General sostuvo que el licenciado Rosado Nieves violó el Canon 23 del Código de Ética Profesional, *supra*, al adquirir un interés y una participación personal en el dinero que obtuvo su cliente en la venta de una propiedad de ésta. Por esa transacción, en la cual el licenciado Rosado Nieves fungió como notario, recibió un cheque por la cantidad de veintiséis mil dólares de parte de Doral, entidad que ofreció el financiamiento del negocio. De la cantidad recibida por el licenciado Rosado Nieves, once mil dólares correspondían al pago de una deuda personal que tenía la señora Quiñones con él. El resto del dinero correspondió al pago de gastos y sus honorarios por distintas gestiones que realizó en beneficio de la señora Quiñones.[12]

De la prueba presentada ante el Comisionado Especial surge que la señora Quiñones nunca se querelló de la conducta relacionada con el trabajo legal del licenciado Rosado Nieves ni con la retención de los $26,000; al contrario, *es-*

---

[12] El Procurador General solicitó del querellado un desglose de los honorarios que cobró, los cuales ascendieron a veintiséis mil dólares. En ese desglose el licenciado Rosado Nieves alegó que de los veintiséis mil dólares que recibió por conducto de un cheque que emitió Doral, once mil dólares eran de una deuda que tenía la señora Quiñones con él por la venta de un Toyota propiedad del querellado; $1,814.57 corresponden a costos de tres escrituras, y $13,185.43 corresponden a honorarios por los servicios legales que le ofreció a la señora Quiñones.

*tuvo conforme.* La retención se hizo en su presencia y con su anuencia.

█ El citado Canon 23 prohíbe la adquisición de interés o participación en el asunto en litigio. A estos efectos, hemos establecido que el carácter litigioso del bien tiene que coincidir en tiempo con la intervención del abogado en el litigio en relación con el bien. Como mencionáramos, nada impide que una vez concluido el litigio, se le otorgue al abogado una participación en el bien del cliente en pago de sus honorarios. *In re Castro Mesa et al.*, supra.

En el caso de autos, se contrató al licenciado Rosado Nieves para ejecutar la sentencia de un pleito de liquidación de una sociedad de gananciales. El bien objeto de liquidación se vendió en pública subasta y se le adjudicó a su clienta. Eventualmente, la clienta vendió el inmueble a un tercero y es de esta venta que el querellado recibió $26,000. Debemos señalar que el inmueble ya no era objeto de litigio alguno, por lo que es perfectamente válido que con su venta se paguen los honorarios del abogado o cualquier otra deuda que se tenga con él.

█ El Canon 23 del Código de Ética Profesional, *supra*, también obliga al letrado a dar pronta cuenta del dinero o de los bienes que recibe del cliente y proscribe que mezcle esos bienes con los suyos. A estos efectos, hemos dicho que constituye conducta contraria a los cánones el que un abogado, aunque se le adeuden honorarios, los cobre por su cuenta. *In re Morales Soto*, supra. Sin embargo, la conducta que se quiere evitar es que el abogado cobre *indebidamente* los honorarios de abogado que se le adeudan —*sin el conocimiento y la autorización* de sus clientes— al momento de recibir dinero o bienes que le pertenezcan a sus clientes.

En el caso de autos, la transacción en la cual se giró un cheque por veintiséis mil dólares a favor del licenciado Rosado Nieves se hizo con pleno conocimiento y aprobación de la clienta. Nótese que Doral financió la compraventa al entregar tres cheques diferentes, entre los que se encontraba

el hecho a favor del querellado. Esa entrega se hizo frente a la señora Quiñones cuando se otorgó la escritura de compraventa de la propiedad con el tercero. Además, la señora Quiñones reconoció la deuda personal que tenía con el licenciado Rosado Nieves por la venta del auto y por los honorarios debidos.

A tenor con lo expuesto anteriormente, concluimos que el licenciado Rosado Nieves no incurrió en conducta contraria al citado Canon 23 del Código de Ética Profesional al recibir un cheque producto de la compraventa de un inmueble perteneciente a la señora Quiñones en concepto de pago por deuda previa y honorarios devengados, debido a que ese pago fue con el consentimiento de la clienta. Además, ese bien no constituía un bien litigioso cuando se realizó la venta del inmueble, pues había sido adjudicado por venta judicial a la señora Quiñones.

Por su parte, el negocio del automóvil fue un negocio aparte del caso de liquidación de la sociedad de gananciales y de las propiedades involucradas en ella. Ese negocio nada tenía que ver con el inmueble objeto de la venta judicial —que luego se vendió a un tercero— y, por consiguiente, no tenía relación con las escrituras que otorgó el querellado. En fin, la venta del auto tampoco es una violación del citado Canon 23, debido a que nunca fue parte de litigio alguno.[13]

---

[13] Por otro lado, desde *In re Toro Cubergé*, 140 D.P.R. 523 (1996), advertimos que al amparo del Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, las relaciones comerciales entre los abogados y sus clientes son desfavorecidas. La norma que allí establecimos va dirigida a prohibir, de ordinario, las transacciones comerciales entre un abogado y su cliente *cuando éstas tienen el potencial de afectar el juicio profesional independiente del abogado o cuando puedan afectar el deber de lealtad y fidelidad que se le debe al cliente.* Esas transacciones comerciales son inherentemente sospechosas, debido a que no sólo el juicio profesional independiente del abogado puede ser seriamente afectado por sus intereses personales en la transacción, sino que la naturaleza desigual de la relación abogado-cliente la hace susceptible de múltiples abusos. *In re Morell, Alcover*, 158 D.P.R. 791 (2003).

Aunque las transacciones comerciales entre abogado y cliente son de ordinario desfavorecidas, en el caso de autos la venta del carro no tuvo el efecto de afectar el juicio profesional independiente del abogado ni el deber de lealtad y fidelidad que éste le debía a la señora Quiñones. De hecho, la señora Quiñones jamás se quejó del desempeño de su letrado y ratificó en varias ocasiones su conformidad con la venta.

C. Además del señalamiento de la posible violación al deber de imparcialidad que debe guardar todo notario al autorizar un negocio jurídico, el Comisionado Especial nos llama la atención en cuanto a la violación en que incurrió el licenciado Rosado Nieves, tanto al autorizar la escritura de adjudicación judicial como en la autorización de la escritura de compraventa del inmueble con el tercero. Expone que según la sentencia emitida en la liquidación de la sociedad de gananciales, surgía que ambos ex cónyuges tenían derechos propietarios sobre el bien. Por consiguiente, señala el Comisionado, que si alguno de los propietarios tramitaba la venta en pública subasta, tenía que honrarle su participación al otro propietario o hacer constar esa participación en las escrituras autorizadas.[14] Por su parte, el licenciado Rosado Nieves alegó que no podía hacer constar la suma reclamada por el señor Betancourt porque ésta no surgía de la sentencia. Esto, debido a que la suma que se deduce de la sentencia está fundamentada en la valoración del bien en setenta y cinco mil setecientos setenta y cinco dólares, mientras que la suma reclamada está fundada en el valor en que se adjudicó finalmente el bien.

Estos señalamientos nos obligan a examinar el desempeño como notario del licenciado Rosado Nieves en los procedimientos relacionados con la autorización de las escrituras concernientes a la venta judicial del inmueble y su subsiguiente compraventa. En primer lugar, debemos analizar si el interés en el producto de la compraventa que autorizó tuvo el efecto de violentar el deber de imparcialidad que debe ejercer todo notario en el ejercicio de su función. Por otro lado, debemos estudiar el cuidado que ejerció el licenciado Rosado Nieves en la autorización, tanto de la escritura de venta judicial como en la de compraventa.

---

[14] Aunque en la querella presentada no se le imputa ningún cargo relacionado con este señalamiento, en el Informe presentado por el Procurador, al cual el licenciado Rosado Nieves reaccionó, sí se discute.

■ Hemos afirmado que el notario se destaca como un "funcionario imparcial, que recibe, expone y legitima la voluntad de los que ante él comparecen sin tomar bando, sin inclinarse a un lado u otro". *In re Cancio Sifre*, 106 D.P.R. 386, 396 (1977). Su obligación de orientar y advertir se debe desplegar para todos por igual, con imparcialidad. Incluso, hemos precisado que no basta ser imparcial, también hay que aparentarlo. Véanse: *In re Sepúlveda Girón*, 155 D.P.R. 345 (2001); *In re Colón Muñoz*, 131 D.P.R. 121 (1992); *In re Cancio Sifre*, supra.

El licenciado Rosado Nieves, al fungir como notario en la escritura de compraventa que otorgó la señora Quiñones y un tercero, debió guardar la imparcialidad requerida en el ejercicio del notariado. En el caso de autos, parte del dinero obtenido en la compraventa beneficiaría al querellado, ya que con el producto de ésta se le pagarían sus honorarios como abogado de la cliente en el procedimiento de ejecución de la sentencia, los costos del otorgamiento de ambas escrituras y una deuda anterior que tenía la cliente con él. En el caso de autos, nos es forzoso concluir que al autorizar la escritura de compraventa, el querellado tenía un interés particular sobre el negocio jurídico que autorizaba. Ese interés particular pudo haber afectado el carácter de imparcialidad que debe observar todo notario, y su deber de orientar por igual y con el mismo esmero y rectitud a las partes involucradas en el negocio, ya que ninguna de ellas es su "cliente" para estos fines.

Por lo antes expuesto, concluimos que el licenciado Rosado Nieves actuó en contravención con nuestros pronunciamientos en cuanto a la imparcialidad que debe guardar todo notario.

Por otro lado, debemos analizar el cuidado que ejerció el licenciado Rosado Nieves al autorizar la escritura de venta judicial y, posteriormente, la de compraventa. Llama la atención que en ninguna de las dos escrituras se señaló que el señor Betancourt tenía una participación en esa

propiedad. El licenciado Rosado Nieves no sólo tuvo ante sí la sentencia de 1989, sino que estuvo encargado de solicitar la ejecución de esa sentencia, por lo que necesariamente debió tener conocimiento de la participación del señor Betancourt en el inmueble. Sin embargo, no se deduce que haya advertido al alguacil cuando éste adjudicó el inmueble a la señora Quiñones por el valor de su acreencia sin tan siquiera mencionar la acreencia del señor Betancourt. El licenciado Rosado Nieves debió haber hecho constar lo expresado en la sentencia en cuanto a la participación del señor Betancourt en ambas escrituras. Era su deber, también, advertir a las partes otorgantes en los distintos negocios acerca de la participación del señor Betancourt en el inmueble.

La falta de cuidado del licenciado Rosado Nieves, siendo éste el abogado de la señora Quiñones en la ejecución de la sentencia, y teniendo conocimiento de que el bien objeto de venta judicial era un bien ganancial donde tanto su cliente como el ex esposo de ésta tenían participación, es inexcusable. Su conducta va en clara contravención con el deber de cuidado exigido a todo notario.

Por todo lo antes expuesto, concluimos que en cuanto a este último aspecto, el licenciado Rosado Nieves no desplegó la diligencia y el cuidado que exige la práctica de la profesión. Él dejó de cumplir con las obligaciones más básicas de diligencia y cuidado que se le exigen a los letrados al no asegurarse que tanto los documentos que dieron lugar a la venta en pública subasta como en los trámites posteriores conducentes a la compraventa del inmueble se salvaguardara el derecho del señor Betancourt a que se reconociera su interés en la propiedad. Además, incurrió en violación al deber de cuidado al dejar de advertir a los otorgantes y no consignar en las escrituras lo relativo al interés del señor Betancourt en la propiedad objeto de compraventa.

Por los fundamentos anteriores *se dictará una sentencia mediante la cual se suspenderá al Lic. Ángel M. Rosado Nieves del ejercicio de la notaría por el término de nueve meses y hasta que otra cosa disponga este Tribunal. Se ordena a la Oficina del Alguacil que incaute su obra notarial para el trámite de rigor correspondiente por la Directora de la Oficina de Inspección de Notarías.*

*Se dictará la sentencia correspondiente.*

El Juez Presidente Señor Andréu García no intervino.