per curiam:
El Ledo. Edgardo Zapata Torres fue admitido al ejercicio de la abogacía el 8 de agosto de 1990 y al de la notaría el 4 de septiembre de 1990.
El 19 de junio de 2006 el Sr. Roberto Ortiz López presentó ante este Tribunal una queja contra el licenciado Za *548 pata Torres. En ésta nos informó que había contratado verbalmente los servicios de Zapata Torres para que lo representara en una demanda de divorcio que iba a instar contra su esposa, la Sra. Nelly L. Lewis. Alegó que el licenciado Zapata no tramitó el caso de divorcio con la diligencia debida, por lo que fue eventualmente archivado sin perjuicio por el Tribunal de Primera Instancia.
Recibida la queja instada, la referimos al Procurador General para su evaluación e informe. Una vez recibimos el informe del Procurador General, donde indicaba que la actuación del licenciado Zapata se configuraba violatoria de los Cánones 12, 18 y 35 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX, ordenamos la presentación de la correspondiente querella. A esos efectos, el 13 de noviembre de 2007 el Procurador General presentó una querella contra el licenciado Zapata Torres, en la cual se le imputó tres cargos por violaciones a los referidos cánones del Código de Etica Profesional.
Posteriormente, nombramos a la licenciada Crisanta González Seda como Comisionada Especial para que recibiera la prueba correspondiente y nos rindiera un informe con sus determinaciones y sus recomendaciones. Luego de celebrada la vista en su fondo en dicho caso, en la cual se recibió prueba testifical y documental que incluyó el testimonio del propio querellado, así como el expediente del tribunal de instancia del pleito de divorcio, la licenciada González Seda nos rindió su informe con sus recomendaciones. En el informe presentado, la Comisionada Especial concluyó que el querellado había incurrido en las violaciones éticas imputadas.
Pasemos ahora a reseñar en detalle los hechos que le sirven de trasfondo a la queja instada, según los determinó la Comisionada Especial y según surgen de los autos.
I
La demanda de divorcio para la cual fue contratado el querellado se instó el 15 de abril de 2004. En ese momento, *549 la señora Lewis residía en el estado de Kansas, por lo que se solicitó que se expidieran los emplazamientos correspondientes y que se autorizara a emplazarla mediante edictos. La demanda se acompañó también con una moción para remedios provisionales. El tribunal señaló una vista sobre fijación de pensión para el 4 de mayo de 2004, pero a ésta no compareció ninguna de las partes. El querellado, no obstante, se comunicó en ese momento telefónicamente con la Oficial Examinadora de Pensiones Alimenticias y le advirtió, entre otras cosas, que la señora Lewis residía fuera de Puerto Rico, por lo que había solicitado que se autorizara el emplazamiento mediante edictos, pero que el tribunal nada había dispuesto sobre esto. La Oficial Examinadora sometió su informe al foro primario, en el cual informó que no se había expedido aún el emplazamiento en ese caso y que había una solicitud de emplazar mediante edicto.
El 17 de mayo, el tribunal acogió el informe sometido respecto varios asuntos, pero nada dispuso sobre la solicitud de emplazamiento mediante edicto. Del expediente del Tribunal de Primera Instancia surge una nota en la que se indica que la solicitud de emplazamiento mediante edicto de 15 de abril de 2004 fue traída a la consideración del tribunal el 10 de noviembre de 2004.
Días antes, el 5 de noviembre, el querellado había presentado una segunda moción para la autorización del emplazamiento mediante edicto. Evidentemente, esta segunda moción se presentó siete meses más tarde de que se presentara la solicitud original. En el ínterin, el querellado no realizó gestión alguna para traer a la atención del tribunal que estaba pendiente la solicitud de emplazar mediante edicto y la de su expedición, según se desprende del expediente del caso de divorcio. Finalmente, el 17 de noviembre el tribunal dispuso para que se expidiesen los emplazamientos y se emplazara mediante edicto. El edicto, a su vez, se publicó en un periódico de circulación diaria el 11 de diciembre de 2004.
*550 En enero de 2005, la esposa del quejoso le demandó en Kansas solicitando el divorcio.
El 29 de abril de 2005, transcurrido más de cuatro meses de la publicación del edicto, el señor Ortiz López presentó por derecho propio una moción ante el tribunal de instancia, informando sobre el emplazamiento mediante edictos. El 10 de mayo, notificada el 17 de mayo, el foro de instancia atendió la moción de 29 de abril, dictaminando que se daba por enterado de la moción y que se evidenciara que se había notificado a la demandada el edicto y la demanda adecuadamente. El 11 de mayo, el querellado presentó una moción ante dicho foro informando que el edicto y la demanda se enviaron a la demandada y que ésta no contestó. El 20 de mayo, el tribunal se dio por enterado de esta última moción y ordenó al demandante que cumpliese con la orden de 10 de mayo.
El 13 de junio de 2005, el señor Ortiz López compareció nuevamente por derecho propio ante el foro primario e informó que no podía evidenciar el envío por correo certificado de los documentos, mas sometió una carta del abogado de su esposa en la que se indicaba que ella recibió los documentos.
El 23 de junio, el foro primario archivó el caso sin perjuicio por haber expirado en exceso el término de seis meses sin que se hubiese diligenciado el emplazamiento ni presentado documento adicional alguno en el caso, lo cual demostraba falta de interés de las partes. La sentencia dictada se archivó en autos el 29 de junio de 2005. Dos días más tarde, el quejoso compareció por derecho propio y presentó una moción urgente notificando el emplazamiento mediante edicto y la evidencia de notificación de la demanda por correo certificado. De los documentos presentados surge, sin embargo, que el edicto se publicó el 11 de diciembre de 2004 y la notificación se efectuó el 28 de diciembre, ello en exceso de los diez días desde la publicación del edicto que exige la Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III.
*551 Ante este hecho, el 8 de julio el tribunal de instancia dictó una orden en la que hizo constar que la notificación del emplazamiento y de la demanda fue tardía. Indicó que ya se había notificado la sentencia y que lo que correspondía era comenzar el procedimiento nuevamente. El 15 de julio, el licenciado Zapata presentó una moción de reconsideración, indicando que el edicto se publicó el 11 de diciembre y que se envió por correo certificado sin que la demandada hubiese contestado la demanda. No se adujo razón alguna para la dilación en la notificación de la demanda por correo certificado, lo que no le permitió al foro de instancia dictaminar si hubo o no justa causa para la dilación y concluir que tenía jurisdicción el tribunal. El tribunal dispuso un “no ha lugar” a la solicitud de reconsideración el 21 de julio, notificada el 2 de agosto de 2005.
El 17 de agosto de 2005, cuando ya la sentencia dictada por el foro primario era final y firme, el querellado presentó una segunda moción de reconsideración en la cual no se indicó nada nuevo a lo dicho previamente. El foro primario proveyó “no ha lugar” a la segunda solicitud de reconsideración el 30 de agosto, notificada el 8 de septiembre. El 10 de octubre de 2005, el licenciado Zapata presentó un recurso de apelación ante el Tribunal de Apelaciones. El 30 de mayo de 2006, el foro apelativo intermedio desestimó, mediante una sentencia, el recurso presentado por falta de jurisdicción. El tribunal consignó en la sentencia dictada que el caso reflejaba un alto grado de desatención de parte del demandante. Valga señalar que el quejoso también presentó por derecho propio unos escritos ante el Tribunal de Apelaciones.
Durante la vista ante la Comisionada Especial designada, el licenciado Zapata informó que él le ofreció al quejoso, en varias ocasiones, renunciar al caso pero que el quejoso no lo aceptó sino hasta junio de 2006, cuando ya el foro apelativo había desestimado la apelación presentada. Este, no obstante, no presentó ninguna moción a esos efectos ante ninguno de los foros judiciales en los cuales se ventilaba el caso del señor Ortiz López. Al momento de cesar la *552 relación abogado-cliente, el pleito de divorcio en Kansas no se había finiquitado. En la vista ante la Comisionada Especial, el querellado informó también que cobró $300 por sus gestiones y que cooperó con el quejoso traduciendo varios documentos para el trámite judicial que se ventilaba en Kansas. Expresó, además, estar arrepentido de su conducta. El quejoso no testificó en la vista ante la Comisionada, por lo que se desconoce si se presentó un nuevo procedimiento ante los tribunales en Puerto Rico.
A base de los hechos aquí relatados, la Comisionada Especial encontró probados las violaciones éticas imputadas. Concurrimos con su criterio.
p—l I—1
 En infinidad de ocasiones hemos resaltado que los cánones del Código de Etica Profesional tienen como objetivo propiciar que los abogados se desempeñen, profesional y personalmente, acorde con los más altos principios de conducta decorosa para el beneficio de la profesión, de la ciudadanía en general y de las instituciones de justicia del país. In re Pujol Thompson, 171 D.P.R. 683 (2006). Ese es el norte que nos guía al atender casos como el de autos.
El Canon 18 de Ética Profesional dispone que es deber ineludible del abogado atender y defender los derechos de su cliente diligentemente, desplegando en cada caso sus conocimientos y sus habilidades en aquella forma que la profesión jurídica en general estime adecuada y responsable. Este canon constituye una barrera que impide asumir la representación legal de un cliente cuando se entiende que no se tiene la capacidad para representarlo de forma adecuada, competente e idónea. Por otra parte, la desidia, el desinterés, la inacción y la displicencia como patrón de conducta en la representación del cliente, son claramente violatorias de las disposiciones del Código de Ética Profesional. In re Padilla Pérez, 135 D.P.R. 770 (1994).
*553 Hemos sido consistentes en indicar que aquellas actuaciones de un abogado que conlleven o puedan conllevar la desestimación o el archivo de un caso se configuran violatorias al Canon 18. In re Hoffman Mouriño, 171 D.P.R. 567 (2007). Igualmente ocurre con permitir que expire el término prescriptivo o jurisdiccional de una acción, así como desatender o abandonar un caso. Y es que hemos considerado que asumir la representación de un cliente, a sabiendas que no se puede rendir una labor idónea o que el abogado no puede prepararse para el caso sin que ello apareje gastos o demoras irrazonables para el cliente o para la administración de la justicia, son conductas sancionables. In re Meléndez Figueroa, 166 D.P.R. 199 (2005); In re Marini Román, 165 D.P.R. 801 (2005).
Cuando el abogado incumple injustificadamente con las órdenes del tribunal, falta a su deber de notificar al cliente sobre las incidencias del caso y por su descuido y negligencia se desestima la reclamación del cliente, incurre en una violación al Canon 18. In re Ortiz Velázquez, 145 D.P.R. 308 (1998).
El Canon 12 del Código de Ética Profesional por su parte, impone al abogado el deber de tramitar las causas de forma responsable, con puntualidad y diligencia. El canon dispone, específicamente, que “[e]s deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas”. 4 L.P.R.A. Ap. IX, C. 12. Esto implica que el abogado debe desplegar todas las diligencias necesarias para asegurar que no se causen dilaciones indebidas en la tramitación de un caso y su eventual solución.
En atención a ello, la incomparecencia injustificada a las vistas señaladas por el tribunal que ocasionaron la suspensión de la vista —que conlleva la dilación injustificada de los procesos y supone que se incurra en gastos innecesarios— se configura como una violación a este *554 canon. Véanse: In re López Montalvo, 173 D.P.R. 193 (2008); In re Rosado Nieves, 159 D.P.R. 746 (2003).
Finalmente, el mencionado Canon 35 del Código de Ética Profesional establece, en lo pertinente, que la conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros, debe ser sincera y honrada. Allí se dispone que no es sincero ni honrado utilizar medios que sean incompatibles con la verdad y que no se debe inducir al juzgador a error utilizando artificios o una falsa relación de hechos o de derecho.
Este precepto impone al abogado unas normas mínimas de conducta, indispensables para promover el honor y la dignidad de la profesión. In re López de Victoria I, 163 D.P.R. 1 (2004). Hemos enfatizado que todo miembro de la profesión legal debe cumplir con los deberes de sinceridad, de exaltación del honor y de la dignidad de la profesión. En virtud de ello, el abogado que provee al tribunal información falsa o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumple con este canon. No es defensa, en estos casos, que no se haya obrado de mala fe o deliberadamente o sin la intención de engañar, como tampoco lo es que no se le haya causado daño a un tercero. In re Astacio Caraballo, 149 D.P.R. 790 (2000).
I—I 1—I
A la luz de los hechos antes reseñados y del derecho aplicable en este caso, concurrimos con la Comisionada Especial en que el licenciado Zapata incurrió en una conducta violatoria de los Cánones 12, 18 y 35. Los hechos, según determinados por la Comisionada, demuestran que el querellado no ejerció el cuidado y la diligencia necesarios en la gestión que le fue encomendada. No hay controversia alguna en que no se cumplió con el término que disponen las Reglas de Procedimiento Civil para emplazar, ni se justificó de forma alguna la dilación en el cumplimento con di *555 cho procedimiento. Una vez el abogado presentó la demanda de divorcio y la moción para que se autorizara el emplazamiento mediante edicto, éste se desentendió completamente del caso hasta que transcurrió el término de seis meses para diligenciar el emplazamiento. Véase Regla 4.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.
El querellado informa que compareció en varias ocasiones a la Secretaría del tribunal de instancia para ver si se habían expedido los emplazamientos. Lo cierto es que en el expediente no hay moción alguna dirigida al tribunal que advirtiera de esta situación y de la necesidad de que se actuara prontamente para evitar que transcurriera el término reglamentario para el diligenciamiento. No es aceptable que la primera moción que se presentara sobre este particular, se instara siete meses después de presentada la demanda original.
Tal y como señala la Comisionada, es cierto que del ex-pediente del caso ante el foro de instancia se desprende que la Secretaría del Tribunal de Primera Instancia no llevó a la atención del juez oportunamente la moción para la expedición del emplazamiento mediante edicto. Ello, sin embargo, no justifica que en el ínterin el querellado no efectuara gestión alguna sobre este asunto. La posible falta de diligencia de la Secretaría no justifica la propia. Adviértase que, tan pronto este asunto fue traído a la atención de la juez de instancia, ésta actuó diligentemente ex-pidiendo los emplazamientos y autorizando el emplazamiento mediante edictos.
Como indicamos, el foro primario finalmente ordenó que se expidiesen los emplazamientos y autorizó el emplazamiento mediante edicto. Sorprendentemente, el querellado vuelve a incumplir con los términos de las Reglas de Procedimiento Civil en esta ocasión, con la Regla 4.5 que regula el término para notificar a un demandado emplazado mediante edicto, la publicación del edicto y la copia de la demanda, como tampoco se adujo justa causa para dicho incumplimiento. Esto provocó que se desestimara, aunque *556 sin perjuicio, la demanda de divorcio. Esta conducta está reñida con los Cánones 12 y 18 de Etica Profesional.
Sobre este asunto, citamos del informe de la Comisionada, pues concurrimos con su apreciación:
El querellado alega que fue el cliente, quien por su formación de militar quiso tener el control del caso, quiso llevar los edictos, pagarlos y realizar las gestiones relacionadas con éstos. Tales justificaciones no son aceptables, ya que las obligaciones éticas son indelegables y ningún abogado puede descansar en que el cliente asuma su responsabilidad de velar por el incumplimiento con los términos y órdenes de los tribunales y organismos ante los que realizan sus funciones de representantes legales. Menos aún, cuando tal actuación puede, como en este caso, ocasionar dilaciones y la desestimación del caso. Informe de la Comisionada Especial de 13 de abril de 2009, pág. 23.
Nada más tenemos que añadir a lo dicho acertadamente por la Comisionada Especial, salvo que nos parece inverosímil que se pretenda justificar un claro incumplimiento con una disposición legal y con las obligaciones éticas del abogado aduciendo que la responsabilidad recaía de facto sobre el cliente y no sobre él.
Por otro lado, el abogado de epígrafe presentó una apelación ante el Tribunal de Apelaciones del archivo del caso por el foro inferior fuera del término que proveen las reglas, lo que provocó que se desestimara la apelación por falta de jurisdicción. La única explicación del querellado para esta dilación es que el quejoso ya tenía otra abogada y que él se comunicó con ésta, le envió los documentos al quejoso y que no cobró por la apelación.
Como ya apuntamos, es deber de todo abogado salvaguardar el derecho a recurrir en alzada de una determinación adversa para el cliente, por lo que permitir que transcurra el término de apelación entraña, de suyo, una violación al deber de diligencia de todo abogado. Como regla general, y en ausencia de un convenio sobre el particular, un abogado que actúa como tal en la celebración de unos trámites judiciales a nivel de instancia, no tiene la *557 obligación para con su cliente de continuar como abogado en los trámites de apelación una vez se dicte la sentencia. Ello no quiere decir, sin embargo, que no deba proteger el derecho de su cliente a apelar. Esta obligación existe al margen del acuerdo pactado, pues es corolario del deber de diligencia y de ofrecer una labor idónea y responsable para con un cliente. De más está decir que el hecho de que no cobró por su gestión en alzada no lo releva del cumplimiento con sus obligaciones éticas.
La inacción y dilación de parte del querellado en este caso evitó que el tribunal pudiese adquirir jurisdicción sobre la parte demandada, quien no contestó la demanda presentada y que en su lugar presentó la propia en Kansas. Ello, a su vez, obligó al quejoso a contratar una representación legal para que atendiera el caso en Kansas.
Los hechos aquí relatados demuestran que el querellado no pudo rendir una labor idónea ni competente. Obligó a que su cliente tuviese que incurrir en gastos adicionales a los pactados originalmente para tramitar su divorcio, además que provocó que éste perdiera tiempo en la eventual solución de su caso. En la tramitación del caso el querellado incumplió con los términos para el emplazamiento mediante edictos, con la Regla 47 de Procedimiento Civil sobre la reconsideración y el término de apelación de una sentencia ante el Tribunal de Apelaciones. Su displicencia obligó a su cliente a acudir por derecho propio en más de una ocasión a los tribunales, quien evidentemente no tenía los conocimientos de la ley y de los procesos para hacerlo. Todo esto apunta a violaciones a los Cánones 12 y 18 de Etica Profesional.
Por otra parte, las actuaciones del querellado también se apartan del deber que tiene todo abogado de exaltar el honor y la dignidad de la profesión, conforme lo exige el Canon 35 de Etica Profesional. La información que el querellado le ofreció al tribunal de instancia de que había notificado el edicto y la demanda a la parte demandada sin acreditarlo como lo exige la regla y la no disponibilidad de dicha evidencia cuando el tribunal así lo solicitó, para *558 luego someter evidencia de una notificación tardía, son actuaciones que faltan a los deberes que impone el Canon 35 de Ética Profesional.
Por las razones que hemos mencionado, no albergamos duda alguna que el licenciado Zapata Torres incurrió en violaciones a los Cánones 12, 18 y 35 de Ética Profesional en la tramitación del caso de divorcio del quejoso.
Al determinar la sanción disciplinaria que habrá de imponerse a un abogado que haya incurrido en una conducta reñida con los postulados éticos que guían el desempeño en la profesión legal, podemos tomar en cuenta los factores siguientes: (i) la buena reputación del abogado en la comunidad; (ii) el historial previo de éste; (iii) si ésta constituye su primera falta y si ninguna parte ha resultado perjudicada; (iv) la aceptación de la falta y su sincero arrepentimiento; (v) si se trata de una conducta aislada; (vi) el ánimo de lucro que medió en su actuación; (vii) el resarcimiento al cliente, y (viii) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien de acuerdo con los hechos. Véanse: In re Montalvo Guzmán, 164 D.P.R. 806 (2005); In re Quiñones Cardona, 164 D.P.R. 217 (2005); In re Vélez Barlucea, 152 D.P.R. 298, 310-311 (2000); In re Padilla Rodríguez, 145 D.P.R. 536 (1998). Estos criterios nos sirven de guía al determinar la sanción que procede imponer.
Sopesado los criterios anteriores enumerados, consideramos que la conducta desplegada por el licenciado Zapata Torres denota displicencia y falta de atención a los términos provistos en el ordenamiento procesal civil. Ello provocó, primero, que se desestimara la demanda instada originalmente y luego, al acudir al foro apelativo intermedio, la desestimación por falta de jurisdicción, habida cuenta que dejó transcurrir el término apelativo correspondiente. Este proceder obligó al quejoso a contratar una nueva representación legal, tanto en Puerto Rico como en Kansas, habida cuenta que allá la señora Lewis instó un pleito de divorcio en su contra. Por otro lado, del expediente surge *559 que el querellado no le cobró al quejoso ni cobró por la traducción de documentos del caso para que se utilizaran en el procedimiento que se ventilaba en Kansas. La Comisionada no pudo determinar cuál fue el resultado de este proceso, pues el quejoso no testificó durante la vista celebrada.
Considerando lo anterior, ordenamos la separación inmediata del ejercicio de la abogacía del licenciado Edgardo Zapata Torres por el término de dos meses, contados a partir de la notificación de la presente opinión per curiam.
Le imponemos el deber de notificar a todos sus clientes de su inhabilidad de seguir representándoles, devolver cualesquiera honorarios recibidos por trabajo no realizados e informar oportunamente de su suspensión a los foros judiciales y administrativos del país. Además deberá certificarnos dentro del término de treinta días, contados a partir de la notificación de esta opinión per curiam, el cumplimento de estos deberes.

Se emitirá sentencia de conformidad.

La Jueza Asociada Señora Pabón Charneco no interviene.