PER CURIAM:
La abogacía cumple una función social de notable importancia en nuestra sociedad por su aportación imprescindible a la realización de la Justicia. Así, quienes tienen el privilegio de ser miembros de tan exalta cofradía, tienen una responsabilidad ineludible de actuar siempre acorde a los más rigurosos principios éticos. In re García Muñoz, 170 D.P.R. 780, 788 (2007).
*656 H-l
El Ledo. Eugenio L. Rivera Ramos fue admitido al ejer-cicio de la abogacía el 7 de agosto de 2002 y al ejercicio del notariado el 17 de julio de 2003. En su desempeño como abogado, el licenciado Rivera Ramos asumió la representa-ción legal de la Sra. Diana Fernández Navarro y del Sr. Isidro García Fraticelli en un caso sobre incumplimiento de contrato y daños y perjuicios ante el Tribunal de Pri-mera Instancia, Sala de San Juan. Mediante dicha de-manda, la señora Fernández Navarro y el señor García Fraticelli procuraban el resarcimiento de los daños y per-juicios ocasionados por varios demandados ante la negli-gencia en la inscripción de un inmueble en el Registro de la Propiedad. Como consecuencia de unas faltas no corregi-das en las escrituras sometidas al Registro de la Propie-dad, la señora Fernández Navarro y el señor García Frati-celli se vieron imposibilitados de liquidar la comunidad de bienes existente tras su divorcio. Los hechos que dan base a la queja que hoy nos ocupa están relacionados al trámite de dicho caso.(1)
Para llevar a cabo esta gestión, el 14 de febrero de 2004 la señora Fernández Navarro y el señor García Fraticelli suscribieron un contrato de servicios profesionales con el Ledo. Eugenio L. Rivera Ramos. En dicha ocasión, los ahora querellantes depositaron con el querellado $2,000. En ese momento, las partes acordaron que sería la señora Fernández Navarro la encargada de mantener la comuni-cación con el querellado, ya que por compromisos profesio-nales, al señor García Fraticelli se le hacía imposible.
A partir del momento en que se suscribió el contrato, transcurrieron varios meses sin que la señora Fernández Navarro recibiera información sobre el progreso del caso. Ante tal situación, en varias ocasiones la querellante in- *657 tentó comunicarse por teléfono con el licenciado Rivera Ramos. Sin embargo, no tuvo éxito alguno. Luego de varios meses, el licenciado Rivera Ramos se comunicó con el señor García Fraticelli para reunirse. En ese momento, el licen-ciado Rivera Ramos informó al querellado que la razón de su ausencia se debía a que se encontraba en Estados Uni-dos por una enfermedad. Las partes acordaron que en lo sucesivo sería el señor García Fraticelli quien continuaría las comunicaciones con el licenciado Rivera Ramos, pues la señora Fernández Navarro se encontraba muy molesta ante la desidia y dejadez del querellado. Además, se realizó otro depósito por $2,000. Luego de esta cita, el señor Gar-cía Fraticelli se personó en dos ocasiones a la oficina del licenciado sin poder reunirse con éste. En dos ocasiones adicionales se canceló la visita por teléfono. Finalmente, el 18 de enero de 2006 el señor García Fraticelli no fue aten-dido nuevamente.
Luego de varios trámites procesales,(2) el 17 de noviem-bre de 2004 el licenciado Rivera Ramos presentó la demanda. La demanda incluyó alrededor de catorce de-mandados, sin embargo, sólo fueron emplazados cinco de ellos,(3) quienes ajuicio del querellado, eran los más impor-tantes y sobre quienes recaía la mayor responsabilidad. La decisión de no emplazar a los restantes demandados no fue consultada, informada o explicada a sus clientes por el li-cenciado Rivera Ramos.
Luego de instada la demanda, el notario autorizante de las escrituras preparó un acta de subsanación que fue pre-sentada al Registro de la Propiedad. Mientras se diluci-daba el caso, surgió un incidente procesal sobre si se tras-ladaba el caso o no a otra sala. Aunque la causa de acción surgía de un incumplimiento contractual sobre una escri-tura de compraventa, se incluyó una causa de acción por *658 daños y perjuicios como efecto del incumplimiento. Ade-más, en la sala que se encontraba el pleito sólo se veían casos por incumplimiento contractual. A un día de que se venciera el término de seis meses para diligenciar los em-plazamientos, es decir, el 16 de mayo de 2005 el querellado presentó una moción en la que solicitó la expedición de los emplazamientos de los demandados desconocidos que fal-taban por emplazar. El 19 de mayo de 2005 el tribunal expidió una orden de mostrar causa para el emplazamiento tardío. El término para emplazar a dichas partes había vencido el 17 de mayo de 2005 y del expediente no surgía razón alguna para que la parte demandante no hubiese promovido la expedición de los emplazamientos.
Así las cosas, en la conferencia inicial con antelación al juicio celebrada el 1 de junio de 2005, el tribunal declaró “sin lugar” la solicitud de emplazamiento tardío y no per-mitió un término para extender el período de emplazamiento. Sostuvo que en ausencia de justa causa no se permitiría traer a nadie más al pleito a menos que el emplazador certificara mediante declaración jurada las gestiones infructuosas que hiciera, así como que la parte demandante acreditara justa causa para no haber compa-recido antes al tribunal para solicitar la extensión del tér-mino para emplazar.
No fue hasta el 1 de septiembre de 2005 que el licen-ciado presentó una moción suplementaria a la solicitud para la expedición de los emplazamientos, en la que ad-juntó una declaración jurada del emplazador con las dili-gencias realizadas. En vista de que de la declaración ju-rada no se desprendía la justa causa para la dilación, el tribunal ordenó a la parte demandante presentar una de-manda enmendada para eliminar a las partes que no pu-dieron ser emplazadas. Además, el 24 de agosto de 2005 el tribunal emitió una orden en la que denegó la solicitud de paralización del caso hasta que se resolviera si procedía trasladar el caso a una sala de daños y perjuicios. A tales *659 efectos, el tribunal señaló una conferencia con antelación al juicio para el 6 de octubre de 2005. El tribunal dispuso que una vez se enmendara la demanda y se eliminaran a los demandados que no fueron emplazados, resolvería lo concerniente al traslado del caso a la sala de daños y perjuicios.
El 6 de octubre de 2005 se celebró la conferencia entre los abogados de las partes. El querellado no compareció a esta reunión ni excusó su incomparecencia. El tribunal emitió una minuta en la que le requirió al querellado, en-tre otras cosas, que mostrara justa causa por la cual no debía ser sancionado por su incomparecencia a la conferen-cia pautada. Se ordenó que la minuta fuera notificada directamente a los demandantes a sus respectivas direccio-nes y se le apercibió de que el tribunal podría desestimar la demanda con perjuicio.
Previo a la conferencia entre abogados, la señora Fer-nández Navarro, a falta de información de parte del que-rellado y ante las continuas citas que éste le canceló, recu-rrió a visitar la página electrónica de la Rama Judicial y fue así que se enteró de un señalamiento pendiente del caso. Al percatarse sobre este señalamiento, el señor Gar-cía Fraticelli se comunicó con el querellado pero éste le informó que no tenía que asistir a la vista. Sin embargo, tiempo después, la señora Fernández Navarro recibió copia de la minuta de la vista del 6 de octubre de 2005 y se enteró de la incomparecencia del querellado a la conferencia. Tras varios intentos fallidos del señor García Fraticelli y de la señora Fernández Navarro para comuni-carse con el querellado por vía telefónica, el señor García Fraticelli visitó la oficina del querellado y allí le informa-ron que el querellado se hallaba fuera de Puerto Rico con su madre, quien se encontraba enferma.(4) En dos ocasio- *660 nes más la señora Fernández Navarro volvió a la oficina del querellado para solicitar el expediente del caso, pero la secretaria se negó a entregarlo porque no tenía autoriza-ción para hacerlo.
El 24 de octubre de 2005 el querellado sometió una mo-ción para mostrar causa por su incomparecencia a la con-ferencia del 6 de octubre de 2005. Informó que debido a que tuvo que llevar de emergencia a su madre en ambulancia al Hospital Pavía, se le había hecho imposible comparecer a la vista. Aseguró que intentó comunicarse con el tribunal, pero le fue imposible. El 27 de octubre de 2005 el tribunal le requirió mediante orden una certificación médica de su madre y le alertó de las órdenes incumplidas.(5)
Molesta y preocupada por la actitud de abandono en la que se encontraba su causa de acción, el 28 de octubre de 2005 la señora Fernández Navarro presentó una queja contra el licenciado Rivera Ramos por retención indebida de expediente, falta de información, retención indebida de dinero por los servicios prestados e incumplimiento con las órdenes del Tribunal de Primera Instancia. Ante la impo-sibilidad de conseguir el expediente, el 17 de noviembre de 2005 los querellantes, por derecho propio, presentaron en el tribunal una moción en la que informaron sobre los trá-mites hechos para obtener el expediente del caso y las múl-tiples gestiones para lograr la renuncia de la representa-ción legal del querellado. Pidieron a su vez un plazo para contratar nueva representación legal.
El 23 de enero de 2006 el tribunal dictó una orden exi-giendo a la señora Fernández Navarro que acreditara que el licenciado Rivera Ramos no le había entregado el expe-diente, así como todas las gestiones infructuosas para *661 obtenerlo. Por su parte, se descalificó al licenciado Rivera Ramos como representante legal de la parte demandante y se le sustituyó por una nueva representación legal. Asi-mismo, se reiteró la conferencia señalada para el 22 de febrero de 2006. Luego, mediante una moción de 23 de enero de 2006 se acreditó la entrega del expediente.
El 1 de febrero de 2006 el querellado presentó su moción de renuncia e informó que no había honorarios insatisfe-chos, ni suma alguna pendiente de ser reembolsada a los querellantes. En la conferencia del 22 de febrero de 2006, se concedieron veinte días a la parte demandante para que presentara la demanda enmendada para así eliminar a los demandados que no fueron emplazados en el plazo de seis meses. En la demanda enmendada de 13 de marzo de 2006 sólo se incluyeron los cinco demandados.(6) El 21 de marzo de 2006 el tribunal emitió una orden de desistimiento con perjuicio contra los demandados Banco Popular de Puerto Rico y Popular Mortgage Inc. sin especial imposición de costas. El 1 de agosto de 2006 el tribunal dictó sentencia final en la que decretó a la parte demandante por desistida del caso con perjuicio, sin imposición de costas ni honora-rios de abogado. Cabe señalar que en el curso de la vista celebrada ante el Comisionado Especial, los querellantes no aportaron prueba de que el trabajo extrajudicial y judicial del querellado estuviera valorado en menos de $4,000.
Las anteriores circunstancias motivaron la presenta-ción de la queja por parte de la señora Fernández Navarro y del señor García Fraticelli. Mediante Resolución de 29 de junio de 2007, ordenamos al Procurador General presentar la correspondiente querella contra el Ledo. Eugenio Rivera Ramos. El Procurador General rindió un informe el 6 de abril de 2006 en el que no encontró prueba suficiente de violación a los cánones del Código de Ética Profesional por *662 parte del licenciado Rivera Ramos. Luego de la presenta-ción de dicho informe, la señora Fernández Navarro some-tió evidencia e información adicional en torno a la queja que nos ocupa. En vista de la información y la documenta-ción adicional presentada, emitimos una Resolución el 15 de diciembre de 2006, en la que ordenamos al Procurador General revaluar la queja presentada para que se sometie-ran las recomendaciones correspondientes. El 8 de marzo de 2007, en el “Informe Suplementario al Informe”, el Pro-curador General expresó que del estudio de la información suplementaria facilitada por la querellante, los hechos apuntaban a una posible violación de los Cánones 12, 18, 19 y 20 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Entonces, el 22 de febrero de 2008, designamos al Ledo. Wilfredo Alicea López como comisionado especial en este caso. En el descargo de la encomienda impuesta, el Comi-sionado Especial sometió su informe con las determinacio-nes de hechos y las recomendaciones pertinentes. Sometido el caso ante nuestra consideración, procedemos a resolver.
II
A. Según establece el Preámbulo de nuestro Código de Ética Profesional, “es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía”, por lo que “la consecución de estos fines le impone a los miembros de la profesión jurídica, sobre quienes recae principalmente la misión de administrar la justicia y de interpretar y aplicar las leyes, el deber de desempeñar su alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad”. Preámbulo, 4 L.P.R.A. Ap. IX. El Canon 12 del Código de Ética Profesional, supra, impone al abogado el deber de tramitar las causas con puntualidad y diligencia. In re Vélez Lugo, 168 D.P.R. 492, 496 (2006). Asimismo, impone a los abogados la obligación de *663 ser responsables en la tramitación de los casos que le son encomendados, para evitar entorpecer la resolución de éstos. In re López Montalvo, 173 D.P.R. 193 (2008).
En su texto literal este canon dispone:

Canon 12. Puntualidad y tramitación de las causas

Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de sus causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protec-ción de los derechos sustanciales de su cliente. 4 L.P.R.A. Ap. IX.
La obligación establecida por el Canon 12, supra, ha de cumplirla el abogado en todas las etapas de un litigio, y comprende el acatar fielmente las órdenes del Tribunal. In re Collazo I, 159 D.P.R. 141 (2003); In re Pagán Hernández, 141 D.P.R. 113 (1996). Conforme con lo anterior, se ha enfatizado que los abogados deben la más estricta observancia a las órdenes judiciales. De otro modo pueden quedar sujetos al rigor disciplinario. In re Collazo I, supra, pág. 147 esc. 10.
La continua desobediencia de las órdenes del tribunal demuestra una grave infracción a los principios básicos de ética profesional que exigen el mayor respeto hacia los tribunales. In re Collazo I, supra, pág. 149. El comportamiento de todo abogado “no debe ser otro que el fiel cumplimiento de la ley y el respeto al poder judicial”. In re Díaz Alonso, Jr, 115 D.P.R. 755, 762 (1984), citando a Acevedo v. Compañía Telefónica de P.R., 102 D.P.R. 787, 791 (1974). Por supuesto, no se puede pasar por alto que en ocasiones los abogados están sujetos a la posibilidad de señalamientos conflictivos. Sin embargo, éstos no son razones válidas para suspender y posponer vistas judiciales señaladas con tiempo. Neri Tirado v. Tribunal Superior, 104 D.P.R. 429 (1975). No obstante, los tribunales están obligados a ser *664 comprensivos cuando las circunstancias del caso ameritan la posposición de la vista. In re Vélez Lugo, supra, pág. 497. Ahora bien, la incomparecencia injustificada a las vistas señaladas por el tribunal, que ocasionen la suspensión y peor aún, la desestimación de la acción judicial, son viola-ciones patentes del Canon 12 del Código de Etica Profesional, supra. In re López Montalvo, supra; In re Rosado Nieves, 159 D.P.R. 746 (2003).
B. El Canon 18 del Código de Ética Profesional, supra, impone a todo abogado el deber de desempeñarse de forma capaz y diligente al defender los intereses de su cliente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. Este deber se infringe cuando asume una representación legal consciente de que no puede rendir una labor idónea competente o que no puede prepararse adecuadamente para el caso sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.
Ya este Tribunal ha manifestado que todo miembro de la profesión legal tiene el ineludible deber de defender los intereses de su cliente con el compromiso de emplear “la mayor capacidad, lealtad, responsabilidad, efectividad y la más completa honradez”. In re Cuevas Velázquez, 174 D.P.R. 433 (2008). “[H]emos sostenido, sin ambages, que aquella actuación negligente que pueda conllevar, o en efecto conlleve, la desestimación o archivo de un caso, se configura violatoria del citado Canon 18.” In re Pujol Thompson, 171 D.P.R. 683, 689 (2007). ‘Y así debe ser, pues el deber de diligencia profesional del abogado es del todo incompatible con la desidia, despreocupación y displicencia.” Id.
Este Tribunal manifestó en In re Vélez Barlucea, 152 D.P.R. 298 (2000), que no constituye una violación del deber que impone el Canon 18 del Código de Ética Profe- *665 sional, supra, el no esgrimir la defensa de falta de jurisdic-ción sobre la persona del demandado. En este caso, al li-cenciado Vélez Barlucea se le imputó, entre otras cosas, el haber incurrido en conducta violatoria del Canon 18, supra, al no esgrimir las defensas afirmativas que protegían a su cliente. Señalamos entonces que es facultad discrecio-nal del abogado o la abogada, en consulta con su cliente, invocar o no la defensa de falta de jurisdicción sobre la persona. Puede ser ésta una estrategia o táctica de litigación. Sin embargo, esta decisión debe ser consultada con los clientes y éstos deben estar de acuerdo. In re Vélez Barlucea, supra, págs. 307 — 308.
C. El Canon 19 del Código de Ética Profesional, supra, impone a todo abogado el deber de mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. Esto significa que el abogado está obligado a informar a los clientes sobre las gestiones realizadas para la tramitación de la causa de acción para la que fue contratado. In re García Ortiz, 176 D.P.R. 123 (2009). El deber de informar al cliente es un elemento imprescindible de la relación fiduciaria del abogado y el cliente. La actuación de un abogado de mantener ajeno a su cliente de las incidencias de su caso constituye una lesión al Canon 19 del Código de Ética Profesional, supra, y al proceso general de impartir justicia. In re Rosario, 116 D.P.R. 462 (1985); In re Cardona Vázquez, 108 D.P.R. 6 (1978). El abogado que acepta un caso y no demuestra la competencia y diligencia que exige el ejercicio de la abogacía, y que no mantiene al cliente informado de todo asunto importante que suija en el desarrollo del caso, viola tanto lo dispuesto en el Canon 18 como al Canon 19, supra. In re Rosario, supra.
Hemos expresado, además, que un abogado no sólo debe representar a su cliente con fidelidad, lealtad y diligencia, sino que debe mantenerlo informado de todo asunto importante que surja en el desarrollo del caso cuya *666 atención le ha sido encomendada. In re Cardona Vázquez, supra, págs. 17-18. En otras palabras, el abogado debe mantener informado a su cliente de las gestiones realiza-das y del desarrollo de los asuntos a su cargo, consultán-dole cualquier duda sobre asuntos que no caigan en el ám-bito discrecional, y dentro de los medios permisibles, debe cumplir con las instrucciones de su representado. In re Pagán Ayala, 109 D.P.R. 712 (1980).
D. La relación abogado-cliente debe fundamentarse en la absoluta confianza. Asimismo, todo abogado debe a sus clientes un trato profesional caracterizado por la mayor capacidad, la más devota lealtad y la más completa honradez. Y para cumplir con lo anterior, el abogado debe poner todo su empeño. Canon 18 del Código de Etica Profesional, supra. El Canon 20, supra, dicta el procedimiento que debe seguir un abogado al renunciar a la representación legal de un cliente. Dispone dicho canon que al advenir efectiva la renuncia del abogado, todo letrado está obligado a entregar el expediente del caso, así como cualquier documento relacionado. Al hacerse efectiva su renuncia o descalificación, el abogado tiene la obligación de entregar el expediente a su cliente de inmediato y sin dilación alguna. Canon 20, supra.
En reiteradas ocasiones hemos manifestado que en nuestra jurisdicción un abogado no tiene derecho a retener los documentos de un cliente ni a gravar bienes de este último, aunque medien controversias respecto a los honorarios profesionales. Nassar Rizek v. Hernández, 123 D.P.R. 360 (1989); In re Vélez, 103 D.P.R. 590 (1975). “Esta norma es corolario de la libertad de selección que tiene todo ciudadano de encomendar a un abogado una gestión profesional, y de estimarlo conveniente, retirarle la misma.” In re Vélez, supra, pág. 599.
E. El emplazamiento tiene raigambre constitucional, en virtud del debido proceso de ley. Quiñones Ro- *667 mán v. Cía. ABC, 152 D.P.R. 367 (2000); First Bank of P.R. v. Inmob. Nac., Inc., 144 D.P.R. 901 (1998); Peguero y otros v. Hernández Pellot, 139 D.P.R. 487, 494 (1995); Lanzó Llanos v. Banco de la Vivienda, 133 D.P.R. 507 (1993); Reyes v. Oriental Fed. Savs. Bank, 133 D.P.R. 15 (1993). Cuando un demandado es emplazado debidamente, el tribunal ad-quiere jurisdicción sobre su persona y el demandado que-dará obligado por el dictamen que se emita eventualmente. Márquez v. Barreto, 143 D.P.R. 137, 142 (1997). Por eso, dada la dimensión constitucional del procedimiento de em-plazamiento, hemos establecido que sus requisitos deben cumplirse estrictamente y que su incumplimiento priva de jurisdicción al tribunal. Datiz v. Hospital Episcopal, 163 D.P.R. 10 (2004); First Bank of P.R. v. Inmob. Nac. Inc., supra, pág. 914; Rodríguez v. Nasrallah, 118 D.P.R. 93, 98-99 (1986).
La Regla 4.3(b) de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), vigente al momento de los hechos, disponía que los emplazamientos serían diligenciados dentro del término de seis meses meses de haber sido expedidos. Este término se cuenta desde la presentación de la demanda. Datiz v. Hospital Episcopal, supra; Monell v. Mun. de Carolina, 146 D.P.R. 20 (1998).(7)
Hemos resuelto que el término para diligenciar los emplazamientos es de cumplimiento estricto, no de ca- *668 rácter jurisdiccional, por lo que la regla le confiere discre-ción a los tribunales para conceder prórrogas con respecto a dicho término siempre y cuando el demandante muestre justa causa para ello. López v. Porrata-Doria, 140 D.P.R. 96, 103 (1996). Ahora bien, el término para emplazar
... sólo podrá ser prorrogado por un término razonable a dis-creción del tribunal si el demandante demuestra justa causa para la concesión de la prórroga y solicita la misma dentro del término original. Transcurrido el término original, o su pró-rroga, sin que el emplazamiento hubiere sido diligenciado, se tendrá a la parte actora por desistida con perjuicio. (Énfasis suprimido.) Reyes v. E.L.A. et al., 155 D.P.R. 799, 812 (2001).
Por otro lado, la Regla 4.5 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) regulaba a la fecha de los hechos el emplazamiento mediante edicto.(8) “Este método de emplazamiento es para usarse en los siguientes casos: (1) cuando la persona a ser emplazada se hallare fuera de Puerto Rico; (2) o estando en Puerto Rico, no pudiere ser localizada; (3) o estando en Puerto Rico, se ocultare para no ser emplazada; (4) o fuere una corporación extranjera sin agente residente.” (Cita omitida.) J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2000, T. I, pág. 174.
Por último, los demandados desconocidos son aquellos cuyas identidades se conocen, pero no sus nombres, y por esta razón se procede a denominarlos con un nombre ficticio. Por su parte, en cuanto al emplazamiento de los demandados desconocidos, la Regla 4.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que el emplazamiento se hará por edictos en conformidad con lo dispuesto en la Regla 4.5, supra. Cuando se trate de un demandado con nombre desconocido, la parte demandante tiene la opción de realizar un descubrimiento de prueba que le per- *669 mita conocer el nombre y la dirección de la parte a quien desea demandar, para luego enmendar la demanda y pro-ceder a emplazar personalmente. Núñez González v. Jiménez Miranda, 122 D.P.R. 134 (1988). “Si se decide por este curso procesal[,] hay que ser conscientes que si no se logra completar el proceso dentro del término de seis (6) meses que dispone la Regla 4.3(b) de Procedimiento Civil, supra, se tiene que solicitar prórroga que exponga las razones jus-tificativas del incumplimiento. Regla 68.2 de Procedi-miento Civil, 32 L.P.R.A. Ap. III.” íd., pág. 143.
Ahora bien, el requisito de justa causa no se demuestra “con vaguedades, excusas o planteamientos estereotipados ... sino con explicaciones concretas y particulares, debida-mente evidenciadas, que le permitan al tribunal concluir que la tardanza o demora ocurrió razonablemente, por cir-cunstancias especiales”. Arriaga v. F.S.E., 145 D.P.R. 122, 132 (1998). Véanse, además: García Ramis v. Serrallés, 171 D.P.R. 250 (2007); Rojas v. Axtmayer Ent., Inc., 150 D.P.R. 560 (2000); Pueblo v. Pérez Suarez, 146 D.P.R. 665 (1998).
H-i I — 1
A la luz de la normativa anteriormente desarrollada, es forzoso concluir que el Ledo. Eugenio Rivera Ramos incu-rrió en conducta violatoria de lo más altos preceptos éticos de nuestra profesión.
El Procurador General imputó como primer cargo al li-cenciado Rivera Ramos, una violación a los principios enunciados en el Canon 12 del Código de Etica Profesional, supra, al ocasionar dilaciones innecesarias en el trámite del caso KAC-2004-7756. De la prueba desfilada, el Procu-rador entendió que la tardanza en el diligenciamiento de los emplazamientos y su posterior trámite tardío y sin justa causa, el incumplimiento con las órdenes emitidas en el caso por el Tribunal de Primera Instancia, así como la *670 tardanza en renunciar y entregar el expediente del caso, fueron prueba contundente de la conducta antiética del querellado.
Como segundo cargo se le imputó al licenciado Rivera Ramos la violación de los preceptos enunciados en el Canon 18 del Código de Etica Profesional, supra, al no des-plegar la diligencia y responsabilidad necesaria en el trá-mite del caso KAC-2004-7756, específicamente en cuanto al diligenciamiento de los emplazamientos. Asimismo, se le imputó como conducta violatoria del mencionado canon la solicitud tardía y fuera de término de unos nuevos empla-zamientos que ocasionó la eliminación de demandados en el caso. De igual forma, nuevamente se le imputó la falta de cumplimiento con las órdenes del foro primario, y la tardanza en cumplir con las órdenes emitidas en el caso. Cabe señalar que a pesar de que el Procurador General en su querella imputó como segundo cargo la violación del Canon 18, supra, en el Informe del Comisionado Especial no se discute nada sobre este particular. Por ser uno de los cargos imputados, pasaremos a abordarlo.
Como cuarto cargo se le imputó al querellado Rivera Ramos la violación de los preceptos contenidos en el Canon 20 del Código de Ética Profesional, supra, al no someter la renuncia al caso KAC-2004-7756 oportunamente y retener indebidamente el expediente de dicho caso cuando le fue requerido por sus clientes en primera instancia y luego, mediante orden del Tribunal de Primera Instancia.
Luego de celebrada la vista ante el comisionado especial, Ledo. Wilfredo Alicea López, éste recomendó encon-trar al licenciado Rivera Ramos incurso en violación de los Cánones del Código de Ética Profesional 12,19 y 20, supra. Debidamente sometido el caso ante nuestra consideración, procedemos a resolver.
*671 A. Primero, segundo y cuarto cargos
Por estar íntimamente relacionados el primero, segundo y cuarto cargo, procedemos a discutirlos conjuntamente.
El querellado alega en su contestación a la querella que luego de la presentación de la demanda se comenzó con los emplazamientos, entre los que estuvieron el del Banco Popular, varios notarios involucrados en las transacciones sobre la propiedad y el del Colegio de Abogados. Sin embargo, el querellado afirma que antes de continuar con los emplazamientos, mantuvo comunicación con los abogados del Banco Popular, quienes acudieron al Registro de la Propiedad y sometieron actas de subsanación, lo que al entender del querellado convirtió en académico el emplazamiento del resto de los demandados. Partiendo de la premisa de que fuese ésta una táctica o estrategia del abogado en la defensa de los intereses de su cliente, cabe señalar que el licenciado Rivera Ramos nunca consultó ni informó a los querellantes su decisión de no emplazar. Por lo tanto, no obtuvo el consentimiento de éstos para proceder así. La doctrina es clara al establecer que “las decisiones que se refieran a estrategia o táctica del abogado deben ser consultadas y aprobadas por los clientes”.
Por otra parte, el querellado añade como justificación que la relación abogado-cliente ya había sido menoscabada porque la señora Fernández Navarro cortó la comunicación con él, y que el tribunal había determinado continuar el caso con las partes ya emplazadas. Resultan contradicto-rias las expresiones vertidas por el querellado. Si el empla-zamiento de los restantes demandados resultaba acadé-mico luego de las actas de subsanación sometidas al Registro de la Propiedad por el Banco Popular, ¿por qué entonces el licenciado Rivera Ramos solicitó prórroga para emplazar a los demandantes a un día del vencimiento del periodo de seis meses dispuesto por la ley para diligenciar los emplazamientos? Asimismo, el querellado justifica su conducta con el menoscabo de la relación abogado-cliente. *672 Olvida, sin embargo, que el menoscabo que hoy pretende utilizar como escudo es el producto del abandono y la des-información en la que tenía a sus clientes. Más aún, si la falta de comunicación impedía que el querellado actuara con la diligencia que los cánones requieren, su deber era renunciar en ese momento a la representación legal de los querellantes.
Por otra parte, el tribunal decidió continuar con las par-tes ya emplazadas debido a que cuando el querellado soli-citó prórroga para emplazar a los restantes demandados, no demostró justa causa para la dilación, ni del expediente se desprendían las razones para ella. Eso ocasionó la des-estimación de la causa de acción contra los demás demandantes. Como discutimos anteriormente, cuando se le solicita al tribunal una prórroga para el diligencia-miento de los emplazamientos, no sólo debe ser solicitada dentro del término, sino que además la moción debe venir acompañada de la demostración de justa causa que ame-rite la prórroga. En este caso, cuando el querellado solicitó la expedición de los emplazamientos de los demandados sobre los cuales el tribunal todavía no había adquirido ju-risdicción, no demostró justa causa, por lo que en ausencia de ésta, el tribunal no tenía discreción para prorrogar el término. Fue luego, con la moción suplementaria a la Mo-ción Solicitando Expedición de Emplazamientos, que el querellado acompañó una declaración jurada del emplaza-dor que justificaba las razones para no haber podido em-plazar a los restantes demandados. En dicha declaración, el emplazador expuso que en varias ocasiones visitó la ofi-cina de los demandados, agencias gubernamentales y el Departamento de Estado para localizar a los demandados o conseguir sus direcciones donde ubicarlos, pero no tuvo éxito.
Ahora bien, de la declaración jurada no se desprenden las fechas en las que el emplazador realizó estas gestiones. Asimismo, alegó el querellado en la moción suplementaria *673 que la cantidad de demandados dificultó el emplaza-miento. Más aún, tratándose de demandados desconocidos, el querellado tenía la opción de que si del descubrimiento de prueba no lograba obtener los nombres y las direcciones de los demandados, podía proceder entonces a solicitar el emplazamiento por edicto dentro del término de seis meses. Sin embargo, el querellado solicitó la prórroga para la expedición de los restantes demandados, un día antes de que venciera el término de seis meses para emplazar. Con esta moción, el querellado no acompañó declaración jurada alguna para justificar la prórroga. No fue hasta que el tribunal se lo ordenó que el querellado sometió la declaración jurada, mediante una moción suplementaria. Como conse-cuencia de esta negligencia, el tribunal no permitió la ex-pedición de los emplazamientos y ordenó la enmienda de la demanda para que se eliminara a los demandados no emplazados. Es claro que la falta de diligencia del licen-ciado Rivera Ramos conllevó la eliminación de partes de-mandadas en el caso. Ello a su vez ocasionó demoras inne-cesarias y la posible pérdida de la causa de acción en daños contra dichas partes.
En lo que respecta al incumplimiento del querellado con las órdenes del tribunal, se desprende del expediente que el licenciado Rivera Ramos no pudo asistir a la conferencia entre abogados celebrada el 6 de octubre de 2005 porque tuvo que llevar de emergencia a su madre en ambulancia al Hospital Pavía. El querellado señaló en su Moción Mostrando Causa por Incomparecencia, que intentó en varias ocasiones comunicarse con la sala señalada pero no tuvo resultado. No obstante, el licenciado Rivera Ramos incumplió con la orden emitida por el tribunal el 24 de octubre de 2005, en la que se le requirió que sometiera una certificación médica de su señora madre. Sin duda, en ocasiones ocurren sucesos imprevistos que nos apartan de nuestros compromisos diarios, y entre esos sucesos pueden estar una enfermedad o un accidente. Ahora bien, el que- *674 reliado jamás mostró la certificación solicitada por el tribunal ni se excusó de otra forma. En reiteradas ocasiones este Tribunal ha manifestado que constituye una conducta irresponsable en violación al Canon 18 del Código de Etica Profesional, supra, la incomparecencia del abogado a los señalamientos de vista ante el Tribunal de Primera Ins-tancia, su incumplimiento con las órdenes emitidas por dicho tribunal y por el Tribunal Supremo, y la falta de dili-gencia en la tramitación del caso. In re Grau Díaz, 154 D.P.R. 70 (2001); In re Marrero Figarella, 146 D.P.R. 541 (1998); In re Ortiz Velázquez, 145 D.P.R. 308 (1998). Asi-mismo, viola este canon un abogado que no comparece a las conferencias sobre el estado de los procedimientos del caso y que no contesta las órdenes y requerimientos del tribunal. In re Aguila López, 152 D.P.R. 49 (2000). Incurre también en violación al Canon 18, supra, el abogado que acepta un caso y no demuestra la competencia y diligencia que exige el ejercicio de la abogacía y que no mantiene al cliente informado de todo asunto importante que surja en el desarrollo del caso. In re Rosario, supra. Véanse, ade-más: In re Acosta Grubb, 119 D.P.R. 595 (1987); Colón Prieto v. Géigel, 115 D.P. R. 232 (1984); In re Arana Arana, 112 D.P.R. 838 (1982). Ante lo anterior, es forzoso concluir que el licenciado Rivera Ramos incurrió en una conducta claramente violatoria de los preceptos enunciados en el Canon 18 del Código de Etica Profesional, supra.
Por otro lado, luego de que la señora Fernández Navarro recibió la minuta de la conferencia celebrada el 6 de octubre de 2005 y supo de la incomparecencia de su abo-gado, trató de comunicarse con el querellado, pero nueva-mente, no tuvo éxito. Visitó la oficina del letrado en varias ocasiones pero éste tampoco estaba. Por lo tanto, decidió solicitar su expediente ante el estado de indefensión en el que se encontraba pero las secretarias del querellado le informaron que no podían entregárselo, pues no tenían au-torización para ello. En vista de este cuadro, la señora Fer- *675 nández Navarro tuvo que acudir por derecho propio al Tribunal de Primera Instancia y solicitar una extensión de los términos que el tribunal dispuso. Entonces, el 29 de no-viembre de 2005 el tribunal descalificó al letrado y le or-denó la entrega del expediente a sus clientes. Sin embargo, para el 17 de febrero de 2006, es decir, más de dos meses después, la nueva representación legal de los querellantes no había recibido el expediente. Aduce el querellado que en el contrato de representación legal acordó que no entrega-ría el expediente hasta que fuese cerrado con las corres-pondientes mociones, suma de factura y relevo de responsabilidad. Sin embargo, el querellado parece olvidar que, según el Canon 20 del Código de Ética Profesional, supra, una vez adviene efectiva la renuncia o descalifica-ción de un abogado, existe la obligación legal de entregar inmediatamente el expediente, cosa que no hizo sino hasta pasados dos meses después de la orden del tribunal. Cual-quier cláusula contractual que contravenga lo anterior ca-rece de validez por ser contraria a la ley. Art. 1207 del Código Civil, 31 L.P.R.A. see. 3372. Por todo lo anterior, es forzoso concluir que el licenciado Rivera Ramos faltó al de-ber que le impone el Canon 20, supra, al no entregar el expediente del caso una vez fue efectiva su renuncia.
Por otro lado, los incumplimientos con las órdenes del tribunal no frenaron ahí. Una vez sometida la querella en su contra, el querellado no contestó la primera orden de este Tribunal para que contestara las imputaciones. Se re-quirió una segunda notificación. Esta forma de actuar re-fleja una constante indiferencia hacia el tribunal y sus ór-denes, lo que conlleva una clara violación al Canon 12 y al Canon 18 del Código de Ética Profesional, supra.
B. Tercer Cargo
En su tercer cargo, el Procurador General atribuyó al querellado incumplir con el deber personalísimo impuesto en el Canon 19 del Código de Ética Profesional, supra, de mantener debidamente informado a sus clientes del trá- *676 mite y las gestiones del caso KAC-2004-7756, lo que les llevó a que tuvieran que presentar mociones por derecho propio ante el Tribunal de Primera Instancia.
En este caso, el querellado no cumplió con su deber de informar a sus clientes sobre las gestiones para las que fue contratado. Peor aún, los querellantes visitaron en varias ocasiones la oficina del licenciado Rivera Ramos y trataron de localizarlo varias veces por vía telefónica, sin éxito. Asi-mismo, cuando supieron de la incomparecencia de su abo-gado a la conferencia, visitaron la oficina del querellado y lo llamaron en varias ocasiones pero éste tampoco aparecía. Aduce el licenciado Rivera Ramos en respuesta a este cargo que intentó responderle en varias ocasiones a la señora Fernández Navarro, pero en el teléfono celular de ésta siempre le salía un correo de voz en el cual dejaba mensaje. A su vez, justifica el abandono en el que tenía a sus clientes al menoscabo en la relación abogado-cliente producto de la actitud que asumió la señora Fernández Navarro de no relacionarse más con él. Esa alegación no nos convence. Como dijimos anteriormente, la conducta de indiferencia y dejadez del querellado dio como resultado el comportamiento de la señora Fernández Navarro. Además, esto no es excusa ni justificación para mantener a los clien-tes en un estado de desinformación y desamparo. En todo caso, si no había comunicación con los querellantes, el que-rellado debió renunciar entonces como abogado, en lugar de mantenerlos desinformados. Esta conducta presenta una falta de diligencia en informar que, a su vez, genera una evidente violación de los preceptos enunciados en el Canon 19 del Código de Etica Profesional, supra.
IV
Resta ahora determinar la sanción que debemos imponer al querellado. Para imponer una sanción disciplinaria a un abogado por conducta impropia, es necesario *677 considerar el historial previo del abogado; si éste goza de buena reputación; la aceptación de la falta y su sincero arrepentimiento; si fue realizada con ánimo de lucro, y cualquier otro factor pertinente a los hechos. In re Rodríguez Lugo, 175 D.P.R. 1023 (2009); In re Díaz Ortiz, 150 D.P.R. 418 (2000); In re Arroyo Rivera, 148 D.P.R. 354 (1999).
Recientemente, en In re Santos Rivera, 172 D.P.R. 703 (2007), suspendimos por un mes a un abogado que no fue diligente en la representación de un caso de un cliente, retuvo indebidamente el expediente de dicho litigio des-pués de haber presentado su renuncia al tribunal corres-pondiente, y además incumplió con el deber de todo abo-gado de brindar su dirección actualizada a nuestra Secretaría.
Asimismo, en In re Hernández Pérez I, 169 D.P.R. 91 (2006), al querellado se le imputó el violar los principios establecidos en el Canon 18 del Código de Etica Profesio-nal, supra, al no defender los intereses de sus clientes en forma adecuada y con la debida diligencia, lo que culminó en la pérdida de la causa de acción de daños y perjuicios ante el Tribunal de Primera Instancia. La Comisionada Especial designada estableció que
[n]o exist [ía] la menor duda de que la actuación del querellado no fue diligente, ni adecuada, ni responsable. La demanda de daños y peijuicios presentada fue finalmente desestimada a causa de su pobre diligencia consistente en errores crasos, tales como, no atender el trámite, no contestar planteamientos fundamentales y dejar que el caso fuera desestimado sin rea-lizar esfuerzo alguno. Mientras tanto le[s] informaba a sus clientes que todo estaba marchando bien, faltando así la verdad.
Como segundo cargo se le imputó al abogado violentar los principios del Canon 19 del Código de Etica Profesional, supra, al no mantener informado a sus clientes del desa-rrollo del caso que se le había encomendado. Se tomaron como atenuantes sus más de 30 años de práctica profesio- *678 nal sin señalamiento ético alguno y sus expresiones de arrepentimiento y vergüenza por lo sucedido. Ordenamos su separación por el término de un año.
Finalmente, en In re Montes Fuentes, 174 D.P.R. 863 (2008), se presentó una querella contra el licenciado Mon-tes Fuentes, en la que se le imputó el no haber cumplido con el deber de diligencia establecido en el Canon 18 del Código de Ética Profesional, supra, ni con la obligación de mantener informados a sus clientes según dispone el Canon 19, supra. El licenciado Montes Fuentes aceptó la re-presentación legal de los querellantes para la presentación de una demanda sobre daños y perjuicios ante el Tribunal de Primera Instancia. Presentó la demanda y después de hacerlo, no se comunicó más con sus clientes. Ya que había transcurrido mucho tiempo desde la presentación de la de-manda sin obtener información sobre el desarrollo del caso, los querellantes acudieron directamente al tribunal para indagar al respecto. Fue entonces que se les informó que la demanda había sido desestimada con perjuicio por no ha-berse cumplido con el diligenciamiento de los emplaza-mientos dentro del término correspondiente. Sopesamos en ese entonces para determinar la sanción los hechos si-guientes: (1) que el querellado negó su responsabilidad por lo ocurrido, (2) responsabilizó a sus clientes por las faltas, (3) no emplazó a los demandados, (4) no presentó moción de prórroga, (5) no solicitó nuevos emplazamientos oportu-namente, (6) no recurrió de la determinación adversa y (7) no les notificó lo ocurrido a sus clientes. Determinamos que el querellado debía ser suspendido del ejercicio de la profe-sión indefinidamente.
Tomando en consideración la jurisprudencia anterior-mente reseñada, pasemos a examinar los factores atenuan-tes y agravantes en el presente caso. No existe duda de que las gestiones del querellado Rivera Ramos resultaron posi-tivas para los demandantes luego de las correcciones rea- *679 lizadas en el Registro, que permitieron que finalmente los querellantes liquidaran la comunidad de bienes existente tras su divorcio. Si bien es cierto que de la minuta de la conferencia entre abogados, celebrada el 22 de febrero de 2006, se desprende que se concedieron veinte días a la parte demandante para que presentara demanda enmen-dada en la que eliminara todas aquellas partes que no pu-dieron ser emplazadas en el término contemplado por la Regla 4.3(b) de Procedimiento Civil, supra, no es menos cierto que en ánimos de que no ocurriera una derrota a la justicia, el tribunal reservó para un momento posterior que se trajeran esas partes si el notario Carlos Martínez Olmo no traía como tercero demandado a la persona que le hizo el estudio de título y a su aseguradora. No obstante, de la Moción en Cumplimiento de Orden de 18 de junio de 2006 se desprende que la parte demandante desistió voluntaria-mente contra los demandados y el tribunal dictó sentencia con perjuicio. También, la parte demandante había desis-tido anteriormente mediante Moción de Desistimiento y en Cumplimiento de Orden de 16 de junio de 2006, de la causa de acción en contra del Ledo. Carlos Martínez Olmo y del Fondo Notarial. Asimismo, debemos considerar que éste es el primer señalamiento al querellado, quien goza de buena reputación en la comunidad jurídica.
Ahora bien, aun cuando ésta es la primera falta del li-cenciado Rivera Ramos, debemos considerar como factores agravantes que el querellado no ha aceptado responsabili-dad por los cargos y, en cambio, responsabilizó a la señora Fernández Navarro del menoscabo de la relación abogado-cliente. También, el licenciado Rivera Ramos incumplió en varias ocasiones con las órdenes del tribunal. Adviértase además que el licenciado Rivera Ramos mantuvo a sus clientes huérfanos de información durante la mayoría del tiempo que duró su representación legal. Asimismo, su con-ducta le ocasionó daños a los querellantes, pues las causas *680 de acción contra varios demandados fueron desestimadas con perjuicio. Su abandonada, negligente y dejada con-ducta merece ser sancionada.
Considerado todo lo anterior, ordenamos la suspensión inmediata del Ledo. Eugenio L. Rivera Ramos de la prác-tica de la profesión por el término de treinta días. El que-rellado tiene el deber de notificar a todos sus clientes su inhabilidad para continuar con su representación y deberá devolver a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajos no rendidos. Además, tiene el deber de informar oportunamente de su suspensión a los foros judiciales y administrativos. Estas gestiones deberán ser certificadas a este Tribunal dentro del término de treinta días a partir de la notificación de esta opinión per curiam y sentencia.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta limitaría la san-ción a una censura enérgica. La Juez Asociada Señora Ro-dríguez Rodríguez hizo constar la expresión siguiente:
Disiento de la sanción impuesta por el Tribunal al Ledo. Eugenio Rivera Ramos por considerarla excesiva. Al igual que lo expresado por el Comisionado Especial en su informe, con-sidero que la “falta mayor [del licenciado Rivera Ramos] con-sistió en no haber mantenido informado [s] a sus clientes de su desempeño en el caso y porque no emplazó al resto de los demandados”. Ello requiere que se censure al licenciado Rivera Ramos por este comportamiento, mas no su suspensión del ejercicio de la abogacía.
El Juez Asociado Señor Kolthoff Caraballo no intervino.

 Isidro García Fraticelli y otros v. José Alberto Mercado Miranda y otros, KAC-2004-7756.

 Se procedió a realizar un estudio de título que tardó varios meses.

 Los demandados que el querellado consideró más importantes fueron empla-zados entre el 17 y 18 de febrero de 2005.

 Existe una incongruencia sobre quién visitó en esta ocasión al licenciado Rivera Ramos. En la carta cursada por el licenciado Rivera Ramos el 10 de febrero de 2006, éste mencionó que fue la señora Fernández Navarro. Sin embargo, en la res- *660 puesta a dicha carta, la señora Fernández Navarro señaló que fue el señor García Fraticelli quien visitó la oficina.

 Se refería al término concedido para que se mostrara causa por la cual no debía ser desestimada la causa de acción instada contra el Banco Popular que vencía el 7 de noviembre de 2005 y con las órdenes emitidas en la minuta de la conferencia del 6 de octubre de 2005.

 Se le permitió a la parte demandante que incluyera como parte demandada a la persona que realizó el estudio de título y su aseguradora. Sin embargo, dicha gestión no se realizó.

 La nueva Regla 4.3(c) de Procedimiento Civil de 2009 establece respecto al diligenciamiento del emplazamiento que:
“(c) El emplazamiento será diligenciado en el término de ciento veinte (120) días a partir de la presentación de la demanda o de la fecha de expedición del emplaza-miento por edicto. El Secretario o Secretaria deberá expedir los emplazamientos el mismo día en que se presenta la demanda. Si el Secretario o Secretaria no los expide el mismo día, el tiempo que demore será el mismo tiempo adicional que los tribuna-les otorgarán para diligenciar los emplazamientos una vez la parte demandante haya presentado de forma oportuna una solicitud de prórroga. Transcurrido dicho término sin que se haya diligenciado el emplazamiento, el Tribunal deberá dictar sentencia decretando la desestimación y archivo sin perjuicio. Una subsiguiente des-estimación y archivo por incumplimiento con el término aquí dispuesto tendrá el efecto de una adjudicación en los méritos.”
Esta regla estará en vigor a partir del 1 de julio de 2010.

 Compárese con la Regla 4.6 de Procedimiento Civil de 2009, vigente a partir del 1 de julio de 2010.