per curiam:
A la Leda. Wanda Valentín Custodio se le admitió al ejercicio de la abogacía el 4 de agosto de 1993 y al de la notaría el 11 de agosto de 2000. La Sra. Iris Melba Santoni Tirado presentó una queja jurada contra la licen-ciada Valentín Custodio en la Secretaría de este Foro. El 21 de octubre de 2009 ordenamos al Procurador General que formulara una querella a base de los hechos expuestos en esa queja. El Procurador General así lo hizo e imputó a la licenciada Valentín Custodio haber quebrantado el Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.
Con posterioridad, el Procurador General nos informó que en la querella presentada no se tomaron en considera-ción otras actuaciones de la licenciada Valentín Custodio que también podían violar los Cánones 6, 9, 12, 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Cónsono con *533 lo anterior, ordenamos la presentación de una querella en-mendada que atendiera las actuaciones omitidas. En esa querella se infracciones de los Cánones 6, 9, 12, 18, 35 y 38 de Etica Profesional, id. Designamos al Ledo. Carlos S. Dá-vila Vélez como Comisionado Especial para que recibiera la prueba necesaria y rindiera el informe sobre los hechos en controversia.
El Comisionado Especial presentó su informe ante este Foro y concluyó que la licenciada Valentín Custodio solo violó los Cánones 6 y 18 del Código de Ética Profesional, supra. Recomendó que la sanción se limitara a una amo-nestación y a que le pagara $100 a la señora Santoni Ti-rado por una sanción que un foro administrativo le impuso a esta última como consecuencia de las actuaciones de la abogada. El 13 de septiembre de 2012 la licenciada Valen-tín Custodio informó que ya pagó la sanción de $100 que se le impuso a la señora Santoni Tirado. Veamos los hechos que nos obligan a ejercer nuestra jurisdicción disciplinaria.
I
El 20 de enero de 2004 el Subsecretario del Departa-mento de Justicia notificó a la señora Santoni Tirado una suspensión de empleo y sueldo por el término de diez días. La suspensión se debió a que, alegadamente, la señora Santoni Tirado se negó a realizar un deber de su puesto.
El 30 de enero de 2004 la señora Santoni Tirado con-trató los servicios de la licenciada Valentín Custodio para impugnar la suspensión. Los honorarios se pactaron en $1,000, de los cuales la abogada recibió $600 por adelantado. Ese mismo día, la licenciada Valentín Custodio remitió una carta por correo certificado a la Comisión Ape-lativa de Servicio Público (CASP).(1) Con esa misiva inició *534 el trámite de apelación ante ese foro por la suspensión de empleo. La apelación recibió el número 2004-02-0857. En la carta se certificó haber notificado una copia de la carta al Subsecretario del Departamento de Justicia.
El 5 de marzo de 2004 la CASP emitió una orden en la que concedió al Departamento de Justicia treinta días para contestar la apelación y diez días a la señora Santoni Ti-rado para someter copia de la comunicación con la que se le notificó la suspensión. El 21 de abril de 2004 la licenciada Valentín Custodio presentó una moción ante la CASP e incluyó una copia de la comunicación que se solicitó. No obstante, la licenciada Valentín Custodio escribió en la mo-ción el número de caso erróneo, pues colocó el 2002-10-0391, cuando debió ser el 2004-02-0857.
El 29 de abril de 2004 el Departamento de Justicia con-testó la apelación. Desde esa fecha no hubo trámite alguno en el caso, hasta que el 4 de diciembre de 2006 la licen-ciada Valentín Custodio se personó a la CASP para revisar el expediente del caso. Luego de auscultarlo, escribió en la hoja de control del expediente: “Estoy en espera de vista desde 2004”. Moción informativa y sometiendo expedientes estipulados, 26 de marzo de 2012, Hoja de control para el préstamo de expedientes y/o solicitud de status, Caso Núm. SES 2004-02-0857.
Además de revisar el expediente del caso, la licenciada Valentín Custodio testificó que una empleada de la CASP le indicó que existía una congestión de casos en la agencia, por lo que debía ser paciente. De igual manera, la em-pleada expresó que el trámite ante la CASP no era como en el Tribunal, por lo que debía esperar su turno.
*535 Durante ese periodo, la licenciada Valentín Custodio ofreció de forma infructuosa al Ledo. Orlando Cintrón De Jesús, representante legal del Departamento de Justicia, la posibilidad que se llegara a un acuerdo para finiquitar el proceso administrativo.
El 4 de diciembre de 2006 la licenciada Valentín Custo-dio presentó otra apelación ante la CASP en representa-ción de la señora Santoni Tirado. Esa apelación recibió el número 2006-12-0578. En esencia, se impugnó una deter-minación del Departamento de Justicia de 2 de noviembre de 2006 que le denegó a la señora Santoni Tirado un au-mento de sueldo por años de servicios, ya que se le había suspendido de empleo y sueldo por diez días durante el periodo del 21 de enero al 3 de febrero de 2004, además de que se le concedieron 33 días de licencia desde el 23 de junio al 12 de agosto de 2005.
En el caso 2006-12-0578, la CASP emitió una orden el 18 de diciembre de 2006 en la que requirió a las partes llenar y presentar, en el término de 15 días, uno de dos formularios que se anejaron. En particular, los formularios versaban sobre la solicitud voluntaria de servicio de me-diación o su rechazo. En la orden aludida, la CASP aperci-bió a las partes que el incumplimiento con lo que se ordenó podría conllevar sanciones económicas o hasta desestimar el caso con perjuicio. Además, en la notificación de la or-den, la Secretaria de la CASP requirió a la señora Santoni Tirado que en cinco días laborables certificara por escrito si había entregado al Departamento de Justicia una copia de la apelación y de los documentos que se presentaron. Asi-mismo, la Secretaria de la CASP apercibió a la señora San-toni Tirado que si incumplía con lo ordenado en la notifi-cación, la apelación se archivaría por abandono o por falta de interés.
Durante la vista celebrada ante el comisionado Dávila Vélez, la licenciada Valentín Custodio testificó que con- *536 versó con la representación legal del Departamento de Jus-ticia para auscultar si era posible someter el caso al pro-ceso de mediación.
Así las cosas, el 9 de enero de 2007 el Departamento de Justicia presentó una moción en que expresó que recibió la apelación pero no los tres anejos que ella contenía. Sobre el particular, sostuvo que se comunicó con la licenciada Va-lentín Custodio, quien accedió a enviarle copia de los anejos. No obstante, solicitó a la CASP las copias de los tres anejos del caso porque todavía no se los habían enviado. Asimismo, el Departamento de Justicia presentó el formulario de no aceptación del servicio de mediación. En cuanto a los formularios relacionados con el servicio de mediación, la licenciada Valentín Custodio sostuvo que como el Departamento de Justicia no aceptó la mediación, ella no tenía que presentar ninguno de ellos.
El 11 de enero de 2007 el Departamento de Justicia so-licitó una prórroga de 20 días para contestar. Fundamentó su petición en que la apelación se recibió sin los tres anejos y que, a pesar de que realizó gestiones para obtenerlos, no pudo conseguirlos.
El 30 de enero de 2007 el Departamento de Justicia pre-sentó una moción bajo juramento en la que solicitó la des-estimación del caso. En esa moción sostuvo que se comu-nicó con la licenciada Valentín Custodio en relación con los anejos. A raíz de esa comunicación, la licenciada Valentín Custodio se comprometió a enviar los anejos de la apela-ción tan pronto regresara de sus vacaciones el 9 de enero de 2007. No empece lo anterior, el Departamento de Jus-tina indicó que al 30 de enero de 2007 no había recibido comunicación escrita o verbal de la licenciada Valentín Custodio, excepto una carta que recibió por fax el 16 de diciembre de 2006. Sobre esa carta sostuvo que no creía que fuera uno de los anejos solicitados. No obstante, ex-presó que aunque lo fuera, no había recibido los otros dos. *537 En alternativa a la desestimación, solicitó la consolidación de los casos 2004-02-0857 y 2006-12-0578.
Con posterioridad, el 20 de septiembre de 2007 el De-partamento de Justicia presentó una moción de desestima-ción en el caso 2004-02-0857 por estar inactivo desde el 29 de abril de 2004 cuando contestó la apelación. Además, sos-tuvo que la señora Santoni Tirado incumplió con la orden de 5 de marzo de 2004 de la CASP, que le requería presen-tar una copia de la comunicación mediante la que se le notificó la acción administrativa impugnada. Esa moción de desestimación se le notificó personalmente a la señora Santoni Tirado, pero no a la licenciada Valentín Custodio.
El 13 de noviembre de 2007 la licenciada Valentín Cus-todio presentó una moción en que se opuso a la solicitud de desestimación que se presentó en el caso 2004-02-0857. En particular, la licenciada Valentín Custodio sostuvo que la señora Santoni Tirado tenía tres asuntos pendientes ante la CASP. En específico, los casos 2002-10-0391, 2004-02-0857 y 2006-12-0578. Sin embargo, explicó que ella no re-presentaba a la señora Santoni Tirado en el caso 2002-10-0391. Además, señaló que cumplió con la orden de la CASP de 2004, pero que por un error involuntario a la moción se le asignó un número de caso equivocado. Como se percató del error, acompañó en la moción una copia de la acción administrativa impugnada y una copia de la moción infor-mativa que presentó el 21 de abril de 2004.
De igual forma, mostró inconformidad con que solo se le notificara a su cliente con copia de la moción de desestima-ción que presentó el Departamento de Justicia. Además de solicitar una vista, la licenciada Valentín Custodio requirió que todo escrito que presentara el Departamento de Justi-cia se le notificara a ella como representante legal de la señora Santoni Tirado.
El 17 de julio de 2008 la CASP emitió otra orden en el caso 2004-02-0857 en que tomó conocimiento de la moción *538 de desestimación que presentó el Departamento de Justi-cia y de la oposición que presentó la licenciada Valentín Custodio.
En cuanto al caso administrativo 2006-12-0578, el 17 de julio de 2008 el Departamento de Justicia presentó una moción en la que reiteró su solicitud de desestimación. En específico, expresó que desde el 30 de enero de 2007 pre-sentó una moción de desestimación a la que no se opuso la representación legal de la señora Santoni Tirado. El 22 de octubre de 2008 la CASP concedió veinte días a la señora Santoni Tirado para que mostrara causa por la cual no debía ser sancionada con una penalidad de $100 por sú incumplimiento con la orden de 18 de diciembre de 2006. También tomó conocimiento de las mociones de desestima-ción que presentó el Departamento de Justicia y notificó a las partes que su nueva dirección postal sería P.O. Box 192394, San Juan, P.R. 00919-2394. La licenciada Valentín Custodio nunca contestó esa orden de la CASP.
En noviembre de 2008 la señora Santoni Tirado, por derecho propio, presentó una "Moción en cumplimiento de orden” en el caso 2006-12-0578. En ella expresó que recibió las órdenes de 22 de octubre de 2008 y de 18 de diciembre de 2006, y que entregó a la licenciada Valentín Custodio una copia de la primera. También indicó que como su abo-gada no la mantuvo informada de los procedimientos ante la CASP, presentó una queja en su contra ante este Tribunal. Por último, pidió que no se le impusiera una san-ción ni que le desestimaran la apelación porque el incum-plimiento con el trámite lo ocasionó la licenciada Valentín Custodio y no ella.
El 9 de septiembre de 2009 la licenciada Valentín Cus-todio cursó una carta a la señora Santoni Custodio para notificarle que había presentado unas mociones de renun-cia a la representación legal en los casos 2004-02-0857 y 2006-12-0578. Acompañó con la misiva copia de las dos mo-ciones y le envió un giro postal por la cantidad de $600 por *539 concepto de devolución de los honorarios de abogados que se pagaron hasta ese momento.
El 23 de diciembre de 2009 la licenciada Valentín Cus-todio envió en un sobre las dos mociones de renuncia que correspondían a los casos 2004-02-0857 y 2006-12-0578. El sobre se envió a la dirección P.O. Box 9023990, San Juan, P.R. 00919-2394, anterior dirección de la CASP. El servicio de correo postal de Estados Unidos devolvió el sobre a la licenciada Valentín Custodio y le adhirió un papel amarillo que lee: “FORWARD TIME EXP RTN TO SEND”. Del pa-pel adherido también surgía que la nueva dirección postal de la CASP era: P.O. Box 192394, San Juan, P.R., 00919-2394.
Al recibir el sobre devuelto con las dos mociones de re-nuncia, la licenciada Valentín Custodio lo colocó sin abrir en otro sobre manila y volvió a enviarlo a la CASP el 17 de octubre de 2009. De forma misteriosa, la licenciada Valen-tín Custodio volvió a enviar las mociones de renuncia a la antigua dirección de la CASP. Como era de esperarse, ese sobre también fue devuelto por el servicio de correo federal.
Por su parte, la licenciada Valentín Custodio aduce que cuando recibió el sobre devuelto por segunda vez, imprimió nuevamente las mociones de renuncia y las volvió a enviar por el servicio regular del correo federal a la dirección correcta. Aunque nunca llamó a la CASP para verificar si las mociones de renuncia habían llegado, la licenciada Cus-todio Valentín presume que sí. Vale puntualizar que la querellada no tiene copia de esas mociones ni recuerda la fecha cuando las firmó. Tampoco se encuentran en los ex-pedientes 2004-02-0857 y 2006-12-0578 de la CASP.
Así las cosas, el 26 de octubre de 2009 la señora Santoni Tirado presentó en la CASP una moción informativa. En ella expresó que el 9 de septiembre de 2009 la licenciada Valentín Custodio presentó dos mociones en que informó su renuncia a la representación legal en los casos 2004-02- *540 0857 y 2006-12-0578. Asimismo, señaló que recibió las dos mociones y un giro por la cantidad de $600. Sin embargo, rechazó haber recibido una copia del expediente de los casos. Además, indicó desconocer la etapa procesal de ellos y si alguno tenía señalamiento. Por esa razón, solicitó a la CASP que ordenara a la licenciada Valentín Custodio en-tregarle el expediente e informarle el estado de las apelaciones.
El 4 de mayo de 2010 la señora Santoni Tirado presentó otra moción por derecho propio e informó que no tenía re-presentación legal porque le solicitó la renuncia a la licen-ciada Valentín Custodio. Indicó, además, que tenía interés en el caso pero que la abogada no le había entregado el expediente.
Cónsono con lo anterior, la CASP emitió una orden el 1 de septiembre de 2010 en el caso 2004-02-0857, en la que requirió a la licenciada Valentín Custodio que entregara el expediente a la señora Santoni Tirado. También, ordenó a esta última que anunciara la nueva representación legal en treinta días.
Por otro lado, en cuanto al caso 2006-12-0578, la CASP emitió una orden el 17 de septiembre de 2010 en la que impuso a la señora Santoni Tirado una sanción económica de $100 por el incumplimiento con la orden de 23 de sep-tiembre de 2008. Esa orden se notificó al Departamento de Justicia, a la señora Santoni Tirado y a la licenciada Va-lentín Custodio. El 27 de septiembre de 2010 la señora Santoni Tirado, por derecho propio, solicitó por escrito la reconsideración de la orden que le impuso la sanción de $100. Fundamentó su pedido en que la licenciada Valentín Custodio no le había entregado el expediente del caso ni le informó cuando renunció que había órdenes pendientes de cumplir. De igual forma, solicitó que le permitiera contra-tar una nueva representación legal.
El 8 de diciembre de 2010 el Ledo. Jorge Tantao Eche-varría presentó una moción para informar que asumió la *541 representación legal de la señora Santoni Tirado. El 7 de marzo de 2011 solicitó a la CASP que considerara favora-blemente la moción de consolidación que presentó el De-partamento de Justicia y que señalara una vista. El 8 de junio de 2011 la CASP consolidó los casos 2004-02-0857 y 2006-12-0578.
Todavía al 8 de junio de 2011 la licenciada Valentín Cus-todio permanecía en los expedientes de la CASP como abo-gada de la señora Santoni Tirado. Como cuestión de hecho, el Comisionado Especial concluyó que la CASP “no ha re-levado a la querellada de la representación legal de la que-josa por no encontrarse en los expedientes las mociones de renuncia”. Informe del Comisionado Especial, pág. 15.
II
El Canon 38 del Código de Ética Profesional, supra, esboza, en lo concerniente, que todo abogado debe esforzarse en la exaltación del honor y de la dignidad de su profesión. Señala, además, que todo miembro de la profesión legal, en “su conducta como funcionario de tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia”. Id. En ese sentido, hemos reiterado que los abogados son el espejo donde se refleja la imagen de la profesión. In re Fontánez Fontánez, 181 D.P.R. 407, 417 (2011). Por esa razón, “deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen”. In re Nieves Nieves, 181 D.P.R. 25, 45 (2011). Véase, además, In re Cuyar Fernández, 163 D.P.R. 113, 117-118 (2004).
De otra parte, el Canon 6 del Código de Ética Profesional, supra, establece, en lo pertinente, que “[a]l pres-tar sus servicios profesionales ante organismos legislativos o administrativos el abogado debe observar los mismos principios de ética profesional que exige su comporta- *542 miento ante los tribunales”. Sobre ese particular, resolvi-mos recientemente en In re Pietri Castellón, 185 D.P.R. 982, 991 (2012), que “el abogado que rinde servicios profe-sionales ante organismos administrativos debe observar los mismos principios de ética profesional que exige su comportamiento ante los tribunales”.
Por su parte, el Canon 9 del Código de Ética Profesional, supra, dispone:
El abogado debe observar para con los tribunales una con-ducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o aten-tados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe interve-nir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.
El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerroga-tivas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa.
De esa forma, la desatención a las órdenes de un tribunal o una agencia administrativa en virtud del Canon 6 del Código de Ética Profesional, supra, constituye un grave insulto a su autoridad, en clara violación al mandato expreso del Canon 9, supra. In re Cuevas Borrero, 185 D.P.R. 189 (2012). Véanse, además: In re Torres Viera, 179 D.P.R. 868 (2010); In re Dávila Toro, 179 D.P.R. 833 (2010).
Por otro lado, el Canon 12 del Código de Ética Profesio-nal, supra, dispone:
Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Éllo implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protec-ción de los derechos sustanciales de su cliente.
*543 Como resultado del deber figurado en el Canon 12 de Etica Profesional, id., la conducta de un miembro de la profesión legal no debe entorpecer la resolución de un caso. In re Pietri Castellón, supra. Véase, además, In re Vélez Báez, 176 D.P.R. 201 (2009). Así, las actuaciones y omisiones que coloquen en riesgo la causa de su cliente son violaciones patentes a ese postulado ético. Id. Véase, además, In re Cuevas Velázquez, 174 D.P.R. 433 (2008). Por ello, la falta de diligencia en la tramitación de los casos y el incumplimiento con las órdenes constituyen un patrón de conducta sumamente irresponsable. In re Cuevas Velázquez, supra, pág. 441. Véanse, además: In re Rosado Nieves, 159 D.P.R. 746 (2003); In re Grau Díaz, 154 D.P.R. 70 (2001).
De otro lado, el Canon 18, supra, en lo pertinente, ex-presa:
Será impropio de un abogado asumir una representación profesional cuando está [sic] consciente de que no puede ren-dir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazo-nables a su cliente o a la administración de la justicia.
Es deber del abogado defender los intereses del cliente dili-gentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurí-dica en general estima adecuada y responsable.
Sobre ese canon hemos pautado que “[t]odo miembro de la profesión legal tiene el ineludible deber de defender los intereses de su cliente con el compromiso de emplear ‘la mayor capacidad, lealtad, responsabilidad, efectividad y la más completa honradez’ ”. In re Rivera Ramos, 178 D.P.R. 651, 664 (2010), citando a In re Cuevas Velázquez, supra, pág. 442.
Así pues, “[u]n abogado no puede olvidar que la indife-rencia, desidia, despreocupación, inacción y displicencia en la tramitación de un caso viola el Canon 18”. In re Amill Acosta, 181 D.P.R. 934, 940 (2011), citando a In re Pizarro Colón, 151 D.P.R. 94, 105 (2000).
*544 III
Al aceptar la tarea de representar a la señora Santoni Tirado en las apelaciones ante la CASP, la licenciada Va-lentín Custodio tenía la obligación ineludible de defender los intereses de su dienta. Cónsono con lo expuesto, debió tramitar los casos con puntualidad, diligencia y respetando las órdenes de la CASP. Como la querellada incumplió con lo expuesto anteriormente, quebrantó los Cánones 6, 9, 12, 18 y 38, supra.
Contrario a lo que expresó la licenciada Valentín Custo-dio, las apelaciones ante la CASP en controversia no están imbricadas ni confundidas. Por el contrario, el trámite de cada caso se efectuó de forma separada hasta su consolidación.
En el caso 2004-02-0857, se evidenció que la licenciada Valentín Custodio efectuó las gestiones siguientes: (1) cursó la carta que dio inicio al trámite apelativo ante la CASP; (2) el 21 de abril de 2004 presentó una moción con el número incorrecto, a la que anejó copia de la comunicación del Departamento de Justicia que contenía la determina-ción impugnada; (3) el 4 de diciembre de 2004 se personó a la CASP para examinar el expediente; (4) se comunicó con el abogado del Departamento de Justicia para iniciar con-versaciones transaccionales, y (5) el 13 de noviembre de 2007 se opuso a una moción de desestimación que presentó el Departamento de Justicia.
Al igual que el comisionado Dávila Vélez, concluimos que no se probó que la licenciada Valentín Custodio ac-tuara con desidia e indiferencia en la tramitación del caso 2004-02-0857. Tampoco procede concluir que la demora en el trámite de ese caso se debe a la actuación de la querellada. Esta no controlaba el calendario de vistas de la CASP y tampoco surge que incumpliera con alguna moción en ese caso.
*545 Sin embargo, no podemos concluir lo mismo con relación al caso 2006-12-0578. En cuanto a este caso, la prueba de-mostró que las únicas gestiones que realizó la licenciada Valentín Custodio fueron: (1) presentar la apelación ante la CASP y (2) proponerle verbalmente al abogado del De-partamento de Justicia que refiriera el asunto al programa de mediación. Más aún, del expediente surge que la licen-ciada Valentín Custodio no respondió a las órdenes que emitió la CASP el 18 de diciembre de 2006 y el 22 de octu-bre de 2008.
La acción de la señora Santoni Tirado se pudo archivar por abandono o falta de interés, según surge de su texto, por el incumplimiento con la orden de 18 de diciembre de 2006. Aunque el Departamento de Justicia declinó even-tualmente someter el asunto al programa de mediación, la orden de 18 de diciembre de 2006 era clara al respecto. La licenciada Valentín Custodio, como representante legal de la señora Santoni Tirado, debía llenar uno de los dos for-mularios relacionados al proceso de mediación; sin embargo, no lo hizo. Además, la querellada también incumplió con esa orden por una razón independiente: nunca certificó si entregó al Departamento de Justicia una copia de la apelación y de los tres documentos que se anejaron a ella.
Por otro lado, la omisión de la licenciada Valentín Cus-todio en contestar la orden de 22 de octubre de 2008 es más grave todavía. En esta disposición se le ordenó que mos-trara causa por la cual no se le debía imponer una multa de $100 por incumplir con la orden de 18 de diciembre de 2006. Además, la CASP apercibió a la señora Santoni Ti-rado que el incumplimiento con lo ordenado podía desem-bocar en “la desestimación y archivo con perjuicio” del caso. (Énfasis en el original). Caso Núm. 2006-12-0578, Orden de 22 de octubre de 2008, pág. 29.
Ante ese panorama, la licenciada Valentín Custodio se cruzó de brazos y, en vez de contestar la orden, prefirió enviar el 23 de septiembre de 2009 —casi un año después— *546 unas mociones en las que anunciaba su renuncia a la re-presentación legal de la señora Santoni Tirado. La prueba demostró que esas mociones de renuncia se enviaron a la dirección incorrecta, aunque la licenciada Valentín Custo-dio conocía o debía conocer la dirección correcta. Sin lugar a dudas, esa actuación de la querellada colocó en riesgo la causa de acción de su cliente porque incumplió con la orden de la CASP.
A la luz de lo anterior, concluimos que la licenciada Va-lentín Custodio violó los Cánones 6, 9, 12, 18 y 38 del Có-digo de Ética Profesional, supra; en particular, quebrantó los Cánones 6 y 9, de ese Código, id., al no atender con premura las órdenes que emitió la CASP. Asimismo, violó el Canon 12, supra, por no entregar al Departamento de Justicia los tres anejos que se presentaron junto con la apelación en el caso 2006-12-0578. Con esa actuación se causó una dilación indebida en la tramitación del caso. También abonó al retraso el hecho de que la licenciada Valentín Custodio no entregó de forma inmediata a la se-ñora Santoni Tirado los expedientes de los casos. De igual forma, la querellada también infringió el Canon 18, supra, al no desplegar su más profundo saber y habilidad en la tramitación del caso. Finalmente, tenemos que concluir que la actuación de la licenciada Valentín Custodio violó el Canon 38, supra. Haber desatendido las órdenes de la CASP y los intereses de su dienta no promovió la sana administración de la justicia ni exaltó el honor y la digni-dad de la profesión jurídica.
Por último, clarificamos que el Comisionado Especial concluyó que no se pueden quebrantar los Cánones 9 y 12, supra, en el contexto administrativo. Sin embargo, recientemente determinamos lo contrario en In re Pietri Castellón, supra. Asimismo, no puede haber duda de que el Canon 38 del Código de Ética Profesional, supra, aplica en el contexto administrativo. Velar por la buena administración de la justicia y exaltar el honor y dignidad de la pro- *547 fesión jurídica son postulados éticos que hay que guardar en cualquier foro.
IV
El Canon 35 del Código de Ética Profesional, supra, en lo atinente, establece:
La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
No es sincero ni honrado el utilizar medios que sean incon-sistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávits u otros documen-tos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable.
En virtud del precepto citado, “el abogado que provee al tribunal información falsa o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumple con este canon”. In re Nieves Nieves, supra, pág. 41. Véase, además, In re Pons Fontana, 182 D.P.R. 300 (2011).
Como se deduce del primer párrafo del Canon 35, supra, la conducta de sinceridad y honradez que debe desplegar todo abogado en su desempeño se exige en todo momento y ante todos. En otras palabras, estas normas mínimas se exigen frente a todos: clientes, compañeros abogados y tribunales. Todo el entramado de nuestro sistema judicial se erige sobre la premisa de que los abogados, sobre quienes recae principal-mente la misión de administrar la justicia, han de conducirse siempre con integridad ante los foros judiciales. In re Nieves Nieves, supra, pág. 42. Véase, además, In re Irizarry Vega, 176 D.P.R. 241 (2009).
*548 El 29 de septiembre de 2009 la licenciada Valentín Cus-todio presentó un escrito en el que certificó haber “presen-tado nuestra renuncia a la representación legal de la Sra. Iris Santoni en los casos que están pendientes en CAS[P] objeto de esta Queja”. Moción en cumplimiento de orden de 23 de septiembre de 2009, pág. 1. No obstante, el Comisio-nado Dávila Vélez concluyó, como cuestión de hecho, que esas mociones de renuncia no se encuentran en los expe-dientes de los casos aludidos.
Luego de estudiar la evidencia presentada, concluimos que la licenciada Valentín Custodio no violó el Canon 35, supra. Se estableció por la prueba que la querellada depositó en el correo las dos mociones de renuncia. Así, no podemos indicar que la querellada no fue sincera ni honrada. Aunque técnicamente la moción de renuncia nunca se presentó, sí se depositó en el correo. En vez de una conducta deshonesta, se trata de una conducta descuidada. Repetimos a la profesión legal que,
[ajunque no existe una regla plasmada en nuestro Derecho positivo que regule la forma de presentar una moción de re-nuncia profesional en un caso, por su envergadura se reco-mienda enfáticamente que el abogado presente la moción per-sonalmente o por conducto de un mensajero, o a lo sumo, por correo certificado. In re Amill Acosta, supra, pág. 943.
Más bien consideramos que la conducta de la licenciada Valentín Custodio pareció quebrantar el Canon 20 del Có-digo de Ética Profesional, 4 L.P.R.A. Ap. IX, que regula cómo un abogado debe tramitar su renuncia. Sin embargo, como el Procurador General no formuló un cargo por ese canon, no nos pronunciaremos al respecto. In re Ruffalo, 390 U.S. 544 (1968); In re Pérez Riveiro, 180 D.P.R. 193 (2010); In re Ríos Ríos, 175 D.P.R. 57 (2008).
*549 V
Por último, debemos resolver cuál sanción debemos imponer a la querellada. Para poder realizar esa encomienda es necesario considerar el historial previo de la abogada, si esta goza de buena reputación, la aceptación de la falta y su arrepentimiento sincero, si fue realizada con ánimo de lucro y cualquier otro factor pertinente a los hechos del caso. In re Vázquez Pardo, 185 D.P.R. 1031 (2012); In re Plaud González, 181 D.P.R. 874 (2011).
Recientemente, en In re Pietri Castellón, supra, discipli-namos a un abogado con una censura enérgica por que-brantar los Cánones 6, 12, 18 y 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Fundamentamos nuestro dictamen en que el licenciado Pietri Castellón no actuó diligentemente en el trámite de unos casos administrativos, incumplió con órdenes de la Junta de Personal de la Rama Judicial y no mantuvo informada directamente a su dienta, lo cual culminó en la desestimación con perjuicio de dos querellas y la imposibilidad de solicitar la revisión judicial en las restantes.
En este caso se encuentran presentes unos atenuantes que conviene señalar. En primera instancia, esta es la pri-mera falta de la licenciada Valentín Custodio en su carrera jurídica. Ya hemos reconocido que esto constituye un ate-nuante a considerarse. Véase In re Amill Acosta, supra, págs. 944-945; In re Rodríguez Feliciano, 165 D.P.R. 565, 582 (2005). Tampoco hubo ánimo de lucro en su actuación, pues la licenciada devolvió los honorarios cobrados a la dienta. Por último, los dos casos están activos y tramitán-dose ante la CASP. La dienta no ha perdido su causa.
Considerado todo lo anterior, censuramos enérgicamente a la licenciada Valentín Custodio y le apercibimos que si incurre nuevamente en una conducta contraria a los cáno-nes del Código de Ética Profesional que rigen la profesión de la abogacía, será sancionada rigurosamente.

*550
Notifíquese personalmente esta opinion “per curiam” a la Leda. Wanda Valentín Custodio a través de la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez no intervino.

 Somos conscientes de los cambios de nombre que ha tenido la CASP a través del tiempo, tales como Junta de Apelaciones del Sistema de Administración de Per *534 sonal (JASAP) y Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH). Sin embargo, para facilitar la lectura, siempre nos referiremos al nombre actual de ese organismo: Comisión Apelativa de Servicio Público (CASP). Véase Plan de Reorganización Núm. 2 de 2010, conocido como Plan de Reorganización de la Comisión Apelativa de Servicio Público, 3 L.P.R.A. Ap. XIII.